502 A.2d 624

**COMMONWEALTH of Pennsylvania**

v.

**Bray MURRAY, Appellant.**

Superior Court of Pennsylvania.

Argued June 4, 1985.

Filed Dec. 20, 1985.

440

Carole Kafrissen, Philadelphia, for appellant.

Ram I. Djerassi, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WICKERSHAM, BROSKY and TAMILIA, JJ.

BROSKY, Judge:

This appeal is from judgment of sentence imposed subsequent to conviction for one count of aggravated assault and two counts of simple assault. Appellant raises four issues on appeal, one of which we find meritorious.[1] This case presents the question of whether a criminal defendant's right to a public trial under the Pennsylvania and Federal Constitutions attaches during a preliminary hearing. The issue of whether a defendant's right to a public trial applies to a preliminary hearing is a case of first impression in this Commonwealth. We agree that this constitutional right applies to the preliminary hearing and that the closure of appellant's preliminary hearing was unconstitutional. However, we also find that the error was cured during appellant's trial and, accordingly, we affirm.

## Facts

Appellant was tried with four co-defendants, one of whom pleaded guilty during trial. All were fellow inmates at Holmesburg State Correctional Institution, and all were convicted on various charges of assaulting prison guards during an altercation which occurred at Holmesburg on July 30, 1983. Their preliminary hearing was held on

---

1. Appellant's other three contentions concerned: (1) admissibility of testimony regarding appellant's religion; (2) alleged hearsay; and (3) a supposedly prejudicial newspaper article. None of these has any merit.

August 29, 1983, within Holmesburg State Correctional Institution, instead of at City Hall in a courtroom open to the public. This was apparently because of "security problems related to the transportation of the defendants to City Hall," according to the Commonwealth's brief, paraphrasing the rather cryptic explanation given by the court at the preliminary hearing after defense counsel objected to closure:

> THE COURT: There are certain reasons for security that this case is being held here. I think we all know that. That they don't have to transport them and they don't have to stop their normal activities at Holmesburg. There's many other rational reasons why we are here today.

No explanation for the pre-trial closure was given in the trial court's opinion, despite the defendant's objection to the closure in his post verdict motions.

For whatever reason, appellant's preliminary hearing was held within the prison. Although members of the public with notice of the event *might* have been able to obtain admittance, had they known where and when to seek such permission, we think that this was essentially a closed hearing; it was not freely open to the public. Appellant contends that the closure of the preliminary hearing over defense objection violated due process and his right to a public trial under the Sixth and Fourteenth Amendments to the Constitution of the United States, and violated Article One, Sections 9 and 11, of the Pennsylvania Constitution.[2]

## Pennsylvania Constitution

A. Article One, Section 11.

■ Appellant contends that his right under Article One, Section 11 of this Commonwealth's Constitution was violat-

---

**2.** The Sixth Amendment to the U.S. Constitution reads, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."

Section 9 of Article One of the Pennsylvania Constitution states: "In all criminal prosecutions the accused hath a right to ... a speedy public trial."

Section 11 reads: "All courts shall be open."

ed by the holding of his preliminary hearing in the prison rather than in a courtroom open to the public. Section 11 provides that "[a]ll courts shall be open." Logically, the next question is whether a preliminary hearing is a "court" proceeding. Just two years ago, this Court answered that question in the affirmative. *Re: Petition of Daily Item*, 310 Pa.Super. 222, 456 A.2d 580 (1983) (Brosky, J.).

In *Daily Item,* this Court considered whether the press and public had a right to insist upon access to pretrial judicial proceedings, independent of the defendant's right to a public trial. In that case, the District Justice denied public access to the preliminary hearing held to determine whether the defendant should be tried on criminal homicide charges. The trial court upheld the District Judge's exclusion of the public from the hearing and denial of access to the transcript. We reversed, granting the petitioner access to the transcript. The defendant in that case had requested that the press and public be excluded from the hearing, thus waiving his right to a public trial at that stage. We, therefore, did not address the defendant's constitutional right, only that of the press and the public of access to a preliminary hearing.

For our purposes here, the critical point is that we held in that case, as we do today, that the Pennsylvania Constitutional provision in Article One, Section 11, that "[a]ll courts shall be open," applies to a preliminary hearing.

*Daily Item* involved the assertion of that constitutional right by the public. The issue before us differs only in that here it is the criminal defendant—not the public—who is claiming the benefit of this constitutional provision. Since Section 11 grants a right that accrues to the public, it is inconceivable that it could not also be relied upon by a party to a case. There is no language in Section 11 which would justify such a restriction of standing to assert its violation— and we do not intend to fabricate it. It follows that Section 11 of Article One of the Pennsylvania Constitution was violated by the manner in which the preliminary hearing in this case was conducted.

444

B. Article One, Section 9.

█ This provision of the Pennsylvania Constitution accords the criminal defendant the right to a "public trial." We have concluded above that a preliminary hearing is a "court" proceeding. This would seem to imply that a preliminary hearing is part of a "trial." However, in order to resolve the issue of whether or not this type of "court proceeding" is a "trial", we will examine the nature and importance of the preliminary hearing in Pennsylvania and consider whether it is an integral part of the trial, such that the Section 9 right attaches.

Judge Beck's concurring opinion in *Daily Item* is instructive for our present concern:

The preliminary hearing has a common law and statutory rather than a constitutional origin. Its history extends for a period of nearly 500 years in English criminal jurisprudence.

. . . . .

Pennsylvania first enacted a statute providing for preliminary hearings in 1915.... Interpreting this statute, the Pennsylvania Supreme Court declared that a preliminary hearing is a "positive legal right" of an accused.... The major changes in Pennsylvania law since 1915 have been to expand the right to a preliminary hearing to categories of crime not included in the original 1915 statute and to defendants already incarcerated.

. . . . .

The public as well as the defendant has an interest in the preliminary hearing *because it is a vital and integral part of the criminal adjudicative process.* The public's interest in the proceeding derives from its fundamental interest in the proper administration of justice.

*Daily Item, supra,* 310 Pa.Superior Ct. at 228–29, 456 A.2d at 584 (Beck, J. concurring) (emphasis added).

Thus, under Pennsylvania law, the preliminary hearing is a mandatory part of the accused's criminal trial proceedings. We cannot discern any reason why the constitutional

protections of the Pennsylvania right to a "public trial" should adhere only to the later portion of the trial and not to the preliminary hearing which is mandatory, "vital and integral" in Pennsylvania.

Our own Supreme Court extensively discussed the historical importance of open public trials under the Pennsylvania and federal Constitutions in *Commonwealth v. Contakos*, 499 Pa. 340, 453 A.2d 578 (1982). The Pennsylvania and federal constitutional policy basis of the right to a public trial was summarized as follows:

> to assure the public that justice is done evenhandedly and fairly; to discourage perjury and the misconduct of the participants; to prevent decisions based on secret bias or partiality; to prevent individuals from feeling that the law should be taken into the hands of private citizens; to satisfy the natural desire to see justice done; to provide for community catharsis; to promote the stability of government by allowing access to its workings, thus assuring citizens that government and the courts are worthy of their continued loyalty and support; to promote an understanding of our system of government and courts.

*Contakos, supra*, 499 Pa. at 344, 453 A.2d at 579–80.

We conclude, therefore, that a preliminary hearing is covered by Section 9's guarantee of a "public trial;" and that the instant preliminary hearing was held in contravention of Section 9. It remains to be seen, however, whether this constituted reversible error.

## Federal Constitution

■ Appellant also contends that his Sixth Amendment right to a public trial was violated. Certainly, our conclusion that the Pennsylvania Constitution's public trial provision was violated suggests that the Federal Constitution's public trial provision was also violated. It is quite possible, however, for these two virtually identical clauses to be given different interpretations. Consequently, it is neces-

sary to look to the application of the Sixth Amendment in case law.

In doing so, we first note that research has disclosed no case directly on point—that is, stating whether or not a preliminary hearing is encompassed by the right to a public trial. We are not, however, without guidance in resolving this issue.

The United States Supreme Court has considered the nature and importance of the preliminary hearing in determining that the accused is constitutionally entitled to counsel at that stage. The Sixth Amendment right to counsel applies to the preliminary hearing because it is a "critical stage" of the criminal process. *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

The court has also held that the defendant is constitutionally entitled to a public trial under the Sixth Amendment during a pre-trial suppression hearing. *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). "A suppression hearing often resembles a bench trial: witnesses are sworn and, of course, counsel argue their positions. The outcome frequently depends on a resolution of factual matters." *Waller, supra*, 467 U.S. 47, 104 S.Ct. at 2216. These features of the pre-trial suppression hearing equally well describe the preliminary hearing.

We cannot discern any functional difference of the preliminary hearing from the pre-trial suppression hearing which is of such magnitude that the defendant's right to a public trial should attach to one and not the other. Nor can we see how the preliminary hearing could be a "critical stage" of the trial for the Sixth Amendment right to counsel, but not be a sufficiently important stage of the trial to merit the Sixth Amendment right to a public trial.

The openness of American trial proceedings is a fundamental protection of due process in that public scrutiny of the trial helps to preserve the fairness of the process itself:

The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with

and not unjustly condemned, and the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.

*Gannett Co. v. DePasquale,* 443 U.S. 368, 380, 99 S.Ct. 2898, 2905, 61 L.Ed.2d 608 (1979) (quoting 1 Cooley, Constitutional Limitations 647 (8th ed. 1927) ).

In sum, we can see no reason why these basic protections of our system of public trials should not apply to the preliminary hearing stage of the trial as well. The preliminary hearing is clearly part of the total adjudicatory process of a criminal trial.

More importantly, the policy basis for the public trial provisions in the federal constitution apply to the preliminary hearing because it would offend our judicial process to bind a defendant over for trial on the basis of a closed proceeding just as it would offend our judicial process to convict on tainted or perjured evidence. Either violates due process.

Therefore, we hold that the Sixth Amendment right to a public trial applies to criminal preliminary hearings.[3] We must next discuss whether the reasons advanced by the court below justify the violation of appellant's Sixth Amendment right to a public trial.

*Justification for Closure of a Trial.*[4]

So far we have only concluded that the various constitutional rights do apply to a preliminary hearing and that,

---

**3.** Violation of the defendant's right to a public trial also necessarily violates his Fourteenth Amendment right to due process. *United States v. Cianfrani,* 573 F.2d 835, 847 (3rd Cir.1978), *citing Levine v. United States,* 362 U.S. 610, 616, 80 S.Ct. 1038, 1042, 4 L.Ed.2d 989 (1960).

**4.** Our treatment of closure justification does not differentiate between federal and Pennsylvania constitutional rights. Of course, our state constitution could allow closure on grounds more minimal than those federally imposed—but that standard would never be of any utility, as federal requirements would always preempt them. Conversely, while we could set higher requirements for closure under our state constitution than those which are federally imposed, we see no need to do so. As discussed infra., the federal guidelines are extremely stringent.

therefore, those rights may have been violated by the way the instant preliminary hearing was conducted. However, closure can sometimes be justified. It remains for us to determine whether the instant closure was justifiable.

Our Supreme Court and the United States Supreme Court have considered situations in which it was held that considerations warranted a partial or temporary closure order during an otherwise open public trial. In *Commonwealth v. Knight*, 469 Pa. 57, 364 A.2d 902 (1976), our Supreme Court stated that:

> the right to a public trial is not absolute; rather, it must be considered in relationship to other important interests.
>
> .      .      .      .      .
>
> In considering such other interests, a court must assess all of the circumstances to determine if they present a situation in which an exclusion order is necessary. If the court determines a necessity exists, it may then issue an exclusion order, but the exclusion order must be fashioned to effectuate protection of the important interest *without unduly infringing upon the accused's right to a public trial either through its scope or duration.*

*Knight, supra,* 469 Pa. at 66, 364 A.2d at 906 (emphasis added).

In *Contakos, supra,* our Supreme Court held that an *imminent death threat* to the Commonwealth's principal witness did not sufficiently justify even a partial closure, ordered only during the testimony of that witness and only for the exclusion of spectators who were not parties, from the press, or the defendant's family. A new trial was ordered due to the constitutional infirmity.

■ The United States Supreme Court announced guidelines for the closure of a criminal trial, as follows:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is

Consequently, we cannot envisage a situation where Commonwealth rights would be infringed upon if the corresponding federal rights were respected.

essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984). Accord, *Waller v. Georgia, supra,* 467 U.S. at 45–46, 104 S.Ct. at 2215. Only a *compelling* government interest justifies closure and then only by a means narrowly tailored to serve that interest.[5] *Contakos, supra,* 499 Pa. at 354 n. 2, 453 A.2d at 585 n. 2, *citing Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).

■ In this case, the trial court failed to offer any reasons for closure in its opinion, and the transcript reveals only the vague "security" interest recited above. We find this unexplicated word an insufficient justification for closure.

If we presume that the "security" interest refers to the possibility that the defendants might attempt to escape, the justification is still clearly insufficient. Courts commonly must provide security for the trial of prison inmates. If the perceived danger was from members of the public, either sympathetic or hostile to the defendants, then other appropriate measures could have been taken. In any event, the remainder of the trial was held without any special security measures noted in the record.

■ Closure of a portion of a criminal trial is within the discretion of the trial court, but only within the narrow guidelines which serve to protect the defendants' right to a fair trial. *Knight, supra,* 469 Pa. at 65, 364 A.2d at 906. Unamplified, as it is presented for appellate review here,

---

5. The opinion in *Commonwealth v. Buehl,* 316 Pa.Super. 215, 226, 462 A.2d 1316, 1322 (1983) (Spaeth, J.) is instructive. That case involved the First Amendment right of public access to a pretrial hearing. We noted that "[t]he lower court also erred in failing to articulate, on the record and before ordering closure, its consideration of alternatives to closure." Such an articulation would have been most appropriate in the instant case.

"security" is an insufficient reason to order closure of a preliminary hearing. If it were sufficient, closure could be ordered any time the accused was a prison inmate. Thus, we find that the trial judge abused his discretion in ordering closure.

### Determination of a Remedy

We have, then, concluded that preliminary hearings are covered by a trio of constitutional provisions, and that this particular closure was not justified. In short, error occurred. But before a remedy is indicated, a determination must be made as to whether the error was cured at the trial which followed the preliminary hearing.

■ We must presume that the closure of appellant's preliminary hearing was prejudicial because the harm is by nature incalculable and unquantifiable. *Knight, supra,* 469 Pa. at 65, 364 A.2d at 906. The Third Circuit, in assessing the harm to the defendant whose pretrial hearing was closed held that "a defendant who invokes the constitutional guarantee of a public trial need not prove actual prejudice. Such a requirement would in most cases deprive him of the guarantee, for it would be difficult to envisage a case in which he would have the evidence available of specific injury." *U.S. ex rel. Bennett v. Rundle, supra,* 419 F.2d 599, 608 and 608 n. 30.

An earlier Third Circuit Court of Appeals came to much the same conclusion in attempting to identify the consequences of this particular constitutional error. One of four defendants accused of Mann Act violations objected to the exclusion of the general public from lurid trial testimony concerning the sale of the defendant's eighteen-year-old niece into prostitution. After examining the historic and fundamental purposes behind the right to a public trial, the court granted a new trial to the protesting defendant. "We are duty bound to preserve the right as it has been handed down to us and this we will do only if we make sure that it is enforced in every criminal case, even in such a sordid case as the one now before us." *United States v. Kobli,*

172 F.2d 919, 924 (1949). The same trial was procedurally fair to the three co-defendants who waived their right to a public trial, but was fundamentally unfair to the defendant, Elizabeth Kobli. The only difference between fairness and fundamental unfairness was that the defendant herself had not consented to waiving her constitutional right to a public trial.

In *Waller v. Georgia, supra,* the Court observed that the harm of an improperly closed suppression hearing was unquantifiable; however, the injury still could be rectified. The Court closely fashioned the remedy to suit the harm and ordered a new suppression hearing, leading to a new trial only if the new suppression hearing yielded a new result.

■ However, in this case, we perceive a fundamental difference between the harm of a closed suppression hearing and that from a closed preliminary hearing. The suppression hearing serves to answer the single question of whether the contested evidence or confession should be admitted at trial. Once admissibility is determined, the question is not addressed again during the trial. In contrast, the preliminary hearing takes a first look at the strength of the Commonwealth's evidence against the accused to determine whether the accused should be held for trial. The strength of the Commonwealth's overall case is again examined at the demurrer stage when the Commonwealth rests, and before the case goes to the jury. Each time, the Commonwealth must pass a more stringent test than the test of its *prima facie* case at the preliminary hearing. Finally, the Commonwealth must prove its case beyond a reasonable doubt when the jury verdict is rendered. Thus, the essential question of the preliminary hearing—the examination of the strength of the Commonwealth's case—is answered at several later stages in the trial. Other pretrial hearing issues are not reexamined during the remainder of the trial.

In *Waller v. Georgia,* the Supreme Court emphasized that the remedy must be closely fashioned to suit the harm.

A new, public, suppression hearing was ordered, with a new trial *only* if the suppression hearing yielded a new result. But we think that ordering a new, public, preliminary hearing (and a new trial only if the hearing yielded a new result) would be an empty and futile remedy here. We find it extremely unlikely that once the Commonwealth had proved its case beyond a reasonable doubt, it would fail to pass the *prima facie* test at the new preliminary hearing. If the new preliminary hearing somehow did yield a new result, it could only be that certain charges should be dropped, which could not warrant a new trial on those charges. Logically, a new preliminary hearing is foolish once the evidentiary trial is completed without reversible error.

Since there was no reversible error in the trial held before the jury, we are loath to order a complete new trial. We see no reason to believe that the constitutional infirmity of the preliminary hearing infected the remainder of the trial.

We note that appellant was not without remedy at the trial level nor will future defendants necessarily be denied a remedy. Defense counsel properly objected at the preliminary hearing, but did not petition for certification of an interlocutory order, or petition our Court pursuant to Chapter 15 of the Rules of Appellate Procedure. Either measure would have been appropriate to vindicate an important constitutional right.[6] Now that the entire trial is completed, we are unable to remedy the wrong.

We conclude that there is presumed harm from an improperly closed preliminary hearing, but in this case we think that the harm was cured during the the public trial.

6. A second preliminary hearing does not constitute double jeopardy. *Commonwealth v. Flanders,* 247 Pa.Super. 41, 371 A.2d 1316 (1977), overruled on other grounds, *Commonwealth v. Scott,* 279 Pa.Super. 8, 420 A.2d 717 (1980).

   At such an interlocutory appeal the appropriate remedy would be to remand for a new, public preliminary hearing. To hold at that stage that no remedy would be necessary, (since the subsequent trial would cure the error), would wrongfully nullify this substantive right.

We, therefore, find that no remedy is now necessary in this case, even though we find that appellant's constitutional rights were violated.

Judgment of sentence affirmed.

TAMILIA, J., concurs in the result.