571 A.2d 1084

**COMMONWEALTH of Pennsylvania**

v.

**Larry TROOP, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1989.

Filed March 9, 1990.

614

David G. Ridge, Erie, for appellant.

Joseph P. Conti, Asst. Dist. Atty., Erie, for Com., appellee.

Before CIRILLO, President Judge, and WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge.

This appeal is from the judgment of sentence for three counts each of robbery, criminal conspiracy, theft, and receiving stolen property. Appellant contends that the trial court erred in (1) questioning him in the presence of the jury; (2) refusing to sever appellant's trial from that of his co-defendant; and (3) refusing to dismiss the charges against him or grant a new trial on the ground that his preliminary hearing was improperly conducted. In addition, appellant contends that the evidence was insufficient to support convictions for *separate* counts of criminal conspiracy. For the reasons that follow, we find these claims to be meritless and, accordingly, we affirm the judgment of sentence.

The charges in the instant case arose out of appellant Larry Troop's participation, along with four accomplices—James Troop, Renee Buckner, Bess Brown, and Daniel Verosko—in three separate gunpoint robberies occurring in April, 1988 in Erie, Pennsylvania. The Commonwealth elected to try appellant together with his brother, James Troop. In September, 1988, after attempting to select a jury in Erie County, the trial court determined that a change of venire was warranted. By order dated October 21, 1988, the Pennsylvania Supreme Court directed that the jury be chosen from Allegheny County. A jury from Allegheny County was empanelled and, on November 15, 1988, appellant and James Troop proceeded to trial. On November 18, 1988, the jury found appellant guilty of three counts each of robbery, criminal conspiracy, theft, and receiving stolen property.[1] Appellant filed timely post-trial motions, which were denied. On January 9, 1989, appellant was sentenced to an aggregate term of imprisonment of twenty-

1. James Troop also was found guilty of these crimes; his appeal is docketed at No. 656 Pittsburgh 1989.

four-to-forty-eight-years.  A motion for reconsideration of sentence was filed and denied.  This timely appeal followed.

■ Appellant first contends that he is entitled to a new trial because questions posed to him by the trial court prejudiced him in the eyes of the jury.  A trial judge has the right and sometimes the duty to question witnesses to clarify existing facts and to elicit new facts.  *See, e.g., Commonwealth v. Seabrook*, 475 Pa. 38, 44, 379 A.2d 564, 567 (1977); *see also Commonwealth v. Hammer*, 508 Pa. 88, 100, 494 A.2d 1054, 1060 (1985).  The questioning, of course, should not display bias or feeling nor should it be unduly protracted.  *See Commonwealth v. Seabrook, supra* at 45, 379 A.2d at 567.  Indeed, "[p]articular care must be taken so that the questions do not usurp or unduly encroach upon the fact finding function of the jury by suggesting judicial disbelief of particular testimony or a judicial opinion on one or more issues for or against one side or the other."  *Commonwealth v. King*, 378 Pa.Super. 553, 557, 549 A.2d 195, 197 (1988) (citing *Commonwealth v. Hammer, supra* ).  A new trial is required, however, only when the trial court's questioning is prejudicial, "that is when it is of such nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial."  *Commonwealth v. Hammer, supra* (citing *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973)).

The context in which the court questioned appellant was as follows.  Appellant testified concerning his drug use in April of 1988, stating that he had been "freaking on cocaine" and "messing with drugs".  N.T. November 17, 1988 at 177.  With specific regard to April 11, 1988, the date of the first robbery, appellant stated that he had purchased cocaine from "the Puerto Ricans".  Later that day, appellant stated, the co-defendant James Troop along with his other accomplices (Buckner, Brown, and Verosko) approached him and asked him if he wanted to get "high"; appellant replied that he "got some from the Puerto Ricans."  *Id.* at 180.  When appellant continued to testify

concerning the substance of this conversation, the Commonwealth raised a hearsay objection. During the discussion on the objection, the following exchange occurred:

THE COURT: Maybe if we got the names of the Puerto Ricans, maybe we can get them in through a warrant. Would you like to supply their names, Mr. Troop, who you got this cocaine from?

[APPELLANT]: No. Well, he has an opportunity—I can't—

THE COURT: You can't do what?

[APPELLANT]: I can and I can do it, but—

THE COURT: Well, if you'll give us the names, I'll let you do the hearsay.

*Id.* at 181. Appellant's counsel then requested a sidebar and motioned for a new trial.

After reviewing appellant's claim in context, we are satisfied that these isolated questions were not of such moment as to require the granting of a new trial. The questioning was designed to ascertain the identity of the persons from whom appellant claimed he purchased cocaine. To the extent that the court thereby emphasized appellant's unrelated illegal activity in purchasing narcotics, the questioning was not specially prejudicial, as appellant himself had already testified to that effect. Moreover, the questioning was not extensive, nor did it indicate, on its face, a disbelief of appellant's testimony. We are aware that, at *sidebar*, the trial court indicated its disbelief of appellant's claim that he purchased the cocaine from "Puerto Ricans", *see id.* at 183; however, there is no evidence that this disbelief was conveyed to the jury. Accordingly, we conclude that the court's questioning did not deprive appellant of a fair trial, and thus he is not entitled to relief on this ground.

■ Appellant's second claim arises from the trial court's refusal to sever his trial from that of his co-defendant

brother. Our Supreme Court has noted that, under the Pennsylvania Rules of Criminal Procedure [2] and case law, the decision whether to sever trials of co-defendants is one within the sound discretion of the trial judge and will not be disturbed on appeal absent a manifest abuse of discretion.... The defendant must show *real potential for prejudice and not mere speculation*.... The mere fact that a co-defendant might have a better chance of acquittal if tried separately is not sufficient to grant a motion to sever....

The general policy of the law is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time-consuming duplication of evidence. Joint trials are, in fact, advisable where ... conspiracy is charged.... But the interest in judicial economy must be balanced against the need to minimize the prejudice that may be caused to a defendant by consolidation.... In determining whether the trial judge abused his discretion, the critical factor is whether the accused has been prejudiced by the trial court's decision.

**2.** Rule 1127 provides that "[d]efendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction ... constituting an offense or offenses." Pa.R.Crim.P. 1127(A)(2). Our Supreme Court has noted that "[t]his rule of joinder parallels the case law which recognizes that joint trials of co-defendants [are] advisable when the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to both defendants." *Commonwealth v. Morales*, 508 Pa. 51, 61, 494 A.2d 367, 372 (1985) (citations omitted). The other pertinent Rule is 1128, which provides:

**Severance of Offenses or Defendants**

The court may order separate trial of offenses or defendants or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

**Comment**

This rule provides the procedure whereby the court may, because of prejudice to a party, order separate trials of offenses or defendants that otherwise would be properly tried together under Rule 1127. A defendant may also request severance of offenses or defendants on the ground that trying them together would be improper under Rule 1127.

*Id.*

*Commonwealth v. Patterson,* 519 Pa. 190, 197, 546 A.2d 596, 599–600 (1988) (citations omitted).

After carefully reviewing the record in light of these standards, we are satisfied that the trial court did not abuse its discretion in denying appellant's motion to sever. Appellant argues that he was prejudiced by the court's decision because (1) testimony was introduced at trial concerning the co-defendant's violent nature; (2) their defenses were inconsistent; and (3) open antagonism existed between the co-defendant and his counsel. In support of his claim concerning the co-defendant's violent character, appellant cites only to the testimony of Bess Brown, one of his accomplices. A review of Ms. Brown's testimony indicates that, although she testified that the *co-defendant* had beaten and threatened her, *see* N.T. November 16, 1988 at 96–97, 104, she also stated on cross-examination that appellant never had threatened her, *see id.* at 114, and in fact had protected her at times. *See id.* at 132. In light of the fact that the cross-examination of Ms. Brown clearly outlined the distinction in personalities between appellant and his co-defendant, we cannot conclude that the testimony regarding the co-defendant's character worked to appellant's prejudice. With regard to appellant's claim of inconsistent defenses, our Supreme Court has recognized that "[t]he probability of antagonistic defenses is *one* of the factors that a court should *consider* in deciding whether to grant severance.... However, more than a bare assertion of antagonism is required." *Commonwealth v. Morales,* 508 Pa. 51, 62, 494 A.2d 367, 373 (1985) (citations omitted). Here, although the defenses of the co-defendants were not *identical,* they also were not so antagonistic as to pose a significant possibility of prejudice. Indeed, the central thrust of both defenses was that the defendants had been mistakenly identified; the only real distinction between the two defenses was that the co-defendant, in addition to raising the identification issue, also presented an alibi defense. This minor difference alone is not sufficient to warrant separate trials. Appellant's remaining allegation of prejudice is equally unavailing. Appellant's only argument regarding the prejudice

that resulted from the supposed antagonism between the co-defendant and his counsel is that appellant "would have had a better chance for acquittal" if he had been tried alone. Such an argument was specifically rejected by our Supreme Court in *Commonwealth v. Patterson, supra:* "[t]he mere fact that a co-defendant might have a better chance of acquittal if tried separately is not sufficient to grant a motion to sever."

■ Appellant's third contention relates to what he alleges was an improper preliminary hearing. At appellant's preliminary hearing, a police officer read into evidence, over appellant's objection, a transcribed statement taken from another accomplice, Renee Buckner, which apparently implicated appellant in the robberies.[3] After the charges against appellant were bound over, he filed a motion for a writ of habeas corpus, alleging, *inter alia*, that he had not received a proper preliminary hearing because of the admission of Buckner's statement, and that, without the statement, the Commonwealth had failed to establish a prima facie case. The motion was denied prior to trial. On appeal, appellant argues that the court erred in refusing either to dismiss the charges against him or to grant him a new trial on the ground that his preliminary hearing was improperly conducted. Initially, we note that appellant's suggestion that he should be *discharged* based upon the insufficiency of the evidence at his preliminary hearing is patently meritless, as our Supreme Court has held that the failure to establish a prima facie case at a preliminary hearing "is clearly immaterial where at the trial the Commonwealth met its burden by proving the [offense] beyond a reasonable doubt." *Commonwealth v. McCullough*, 501 Pa. 423, 427, 461 A.2d 1229, 1231 (1983); *cf. Commonwealth v. Davis*, 308 Pa.Super. 204, 212, 454 A.2d 92, 96 (1982) (fact that defendant did not succeed in obtaining discharge at district justice level on grounds that complaint was defective is not ground for disturbing conviction on appeal), *allocatur denied* (February 28, 1983).

---

**3.** The notes of testimony from the preliminary hearing have not been transcribed; thus we cannot review the contents of the statement.

■ Appellant's suggestion that he is entitled to a new trial simply because the Commonwealth introduced hearsay testimony during the preliminary hearing is similarly meritless. We recognize that, in light of the critical nature of the preliminary hearing in assuring that the Commonwealth has a legal basis for prosecuting a person, the *better course* may be for the Commonwealth, whenever possible, to produce evidence to establish its prima facie case that would also be admissible at trial. However, there is no requirement that the Commonwealth do so in all instances. As we noted in *Commonwealth v. Rick*, 244 Pa.Super. 33, 366 A.2d 302 (1976):

> The distinction between a preliminary hearing and the trial itself is well settled. While a trial determines guilt or innocence, the "preliminary hearing is held primarily to prevent the detention of a person for a crime which was never committed or of a crime with which there is no evidence of his connection." ...

> The question at a preliminary hearing is not whether there is sufficient evidence to prove the defendant guilty beyond a reasonable doubt; rather, the question is whether the prosecution must be dismissed because there is nothing to indicate that the defendant is connected with a crime. In this case, the chemist's report, alone, would have been inadmissible at trial to prove appellant was intoxicated. However, the district justice acted correctly in admitting the report to determine that there may have been a crime committed and that appellant may have been involved. Certainly, the difference in purpose between a preliminary hearing and a trial dictates a different enforcement of the rules of evidence.

*Id.*, 244 Pa.Superior Ct. at 36–37, 366 A.2d at 303–04 (citations and footnote omitted); *see also Commonwealth v. Branch*, 292 Pa.Super. 425, 429–30, 437 A.2d 748, 749–50 (1981) (during preliminary hearing, police officer testified, over hearsay objection, that victim's brother, who did not testify at preliminary hearing, saw defendant shoot victim, and Commonwealth represented that victim's brother would

be available at trial; *held,* such hearsay evidence is sufficient to establish prima facie case at preliminary hearing), *allocatur denied* (October 6, 1981). Appellant interprets *Rick* and *Branch* to allow for hearsay testimony at a preliminary hearing only where there is an affirmative showing of unavailability and reliability. But neither *Rick* nor *Branch* hold or suggest that such a showing is required; indeed, in *Branch,* which, like the case at bar, involved the introduction of a witness's *statement,* there was *no* evidence to suggest that the witness was either unavailable or unreliable. *See Commonwealth v. Branch, supra,* 292 Pa.Superior Ct. at 428–29, 437 A.2d at 749–50. Moreover, we note that here, as in *Branch,* the Commonwealth certified in good faith that Buckner would be available at the time of trial. This certification helps to minimize the chances that the primary evil that preliminary hearings are designed to prevent—i.e., the prosecution of persons unconnected with a crime—will occur. Accordingly, appellant is not entitled to relief on the ground that his preliminary hearing was defective.[4]

▪ Appellant last contends that the evidence was insufficient to support convictions for separate counts of criminal conspiracy. Appellant relies on § 903(c) of the Crimes Code, which provides:

**4.** We should also note that, in light of the fact that appellant's guilt was established beyond a reasonable doubt at trial, even if we were to agree that the preliminary hearing was improper we could not conclude that a new trial would be the appropriate remedy, at least absent some showing of actual prejudice. As Judge Brosky noted in *Commonwealth v. Murray,* 348 Pa.Super. 439, 502 A.2d 624 (1985), once a defendant's guilt has been proved in a fair trial, the ordering of a new preliminary hearing would be "an empty and futile remedy":

We find it extremely unlikely that once the Commonwealth had proved its case beyond a reasonable doubt, it would fail to pass the *prima facie* test at the new preliminary hearing. If the new preliminary hearing somehow did yield a new result, it could only be that certain charges should be dropped, which could not warrant a new trial on those charges. Logically, a new preliminary hearing is foolish once the *evidentiary trial is completed without reversible error.*

*Id.,* 348 Pa.Superior Ct. at 452, 502 A.2d at 630; *see also* W. LaFave & J. Israel, *Criminal Procedure,* § 14.4, at 273 (1984 & Supp.1989) ("[m]any courts are of the view that the conviction should be treated as having rendered harmless the magistrate's error—at least in the absence of a showing by defense counsel of actual prejudice at trial.").

**Conspiracy with multiple criminal objectives.**—If a person conspires to commit a number of crimes, he is guilty of only one conspiracy as long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

18 Pa.C.S.A. § 903(c).  We have noted that,

Section 903(c) articulates a concept which is not new in American jurisprudence, " 'The conspiracy is the crime, and that is one, however diverse its objects.' "  *Braverman v. United States*, 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942), *quoting Frohwerk v. United States*, 249 U.S. 204, 210, 39 S.Ct. 249, 252, 63 L.Ed. 561 (1919).  *See also* W. LaFave and A. Scott, CRIMINAL LAW § 62 (1972) ("An agreement to commit several crimes is but one conspiracy.").  In *Braverman, supra,* the Supreme Court went on to explain that, "the single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute. . . ."  *Id.* 317 U.S. at 54, 63 S.Ct. at 102.

More recently, the parameters of this principle have been further defined:

A single, continuing conspiracy is demonstrated where the evidence proves that the essential feature of the existing conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal. . . . A single, continuing conspiracy may contemplate a series of offenses, or be comprised of a series of steps in the formation of a larger, general conspiracy. . . . Therefore, where the evidence at trial is sufficient for the jury to infer that the essential features of the existing conspiracy were a common plan or scheme to achieve a common, single, comprehensive goal or end, then the conclusion that the conspiracy was a single, continuing conspiracy is justified.

*United States v. Continental Group, Inc.,* 456 F.Supp. 704, 716 (E.D.Pa.1978), *aff'd,* 603 F.2d 444 (3d Cir.1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). . . .

*Commonwealth v. Lore,* 338 Pa.Super. 42, 67–68, 487 A.2d 841, 855 (1984) (citations omitted), *allocatur denied* (July 18, 1985).

Here, appellant argues that the trial evidence established that the robberies and other offenses resulted from one ongoing conspiracy, with the single purpose of obtaining money to use to purchase cocaine. We disagree. According to the testimony of one of the accomplices, Bess Brown, the first robbery, on April 11, 1988, occurred after appellant and his four accomplices had taken cocaine, and discussed the need to get money to buy more cocaine. N.T. November 16, 1988 at 55–62. The money taken in the robbery was used to purchase cocaine, which the five shared. *Id.* at 63. Some twenty-seven hours later, on April 13, 1988, the five accomplices were together again, and there was a discussion concerning the need to obtain money to purchase more cocaine. *Id.* at 66–67. Appellant, along with James Troop and Daniel Verosko, then proceeded to an "AM/PM" store and robbed it. *Id.* at 67–70. Once again, the proceeds from the robbery were used to purchase cocaine for the entire group. *Id.* at 70–71. The final robbery occurred later that morning. Bess Brown testified that, prior to this robbery, James Troop mentioned the need to obtain more money for cocaine. *Id.* at 72–73. Appellant Larry Troop agreed, and four of the five then drove to a convenience store and robbed it. *Id.* at 73–77. The proceeds again were used to purchase cocaine. *Id.* at 77.

This testimony alone clearly was sufficient to justify a finding that appellant and his accomplices entered into three separate agreements to commit the robberies. The three criminal episodes that formed the basis for appellant's convictions were separated in time and place. In addition, there was no evidence of a single, pre-existing criminal plan that encompassed the three separate robberies. Instead, the evidence suggested that the group formulated a separate criminal plan and committed a robbery each time the group needed money to buy more cocaine. As the Commonwealth aptly notes in its brief, "the idea and agreement to commit each robbery was formed *only after* the available

cocaine had been used by the co-defendants. Each time the need for cocaine surfaced and each time the need for money to purchase the cocaine surfaced, the group agreed to commit the robberies...." Brief for Appellee at 32. Accordingly, we hold that the evidence warranted a finding of guilt for three separate conspiracies.

For the foregoing reasons, we affirm the judgment of sentence.[5]

Judgment of sentence affirmed.

5. In addition to the brief filed by counsel, appellant has filed a brief *pro se* in which he raises five "supplemental questions." Specifically, appellant claims that (1) his arrest (which was effected pursuant to a warrant, and based upon information provided by one of his co-conspirators, Bess Brown) was unlawful (appellant does not specify what relief he would be entitled to even if this claim had merit); (2) his trial was unfair because certain identification testimony was perjured (appellant bases this claim solely on supposed inconsistencies in the testimony); (3) he is entitled to a new trial because of prosecutorial misconduct; (4) the prosecutor failed to disclose information pursuant to Pa.R.Crim.P. 305; and (5) the court deprived him of a fair trial by ordering him to keep his head down and not look at certain witnesses. Although appellant expresses no dissatisfaction with counsel's performance, he couches these claims in ineffectiveness terms. Pursuant to *Commonwealth v. Gaerttner*, 518 Pa. 452, 543 A.2d 1091 (1988), *see also Commonwealth v. Shaw*, 379 Pa.Super. 491, 495 n. 2, 550 A.2d 555, 557 n. 2 (1988); *but see Commonwealth v. Aultman*, 387 Pa.Super. 113, 119, 563 A.2d 1210, 1216 (1989), we have carefully reviewed the record in light of appellant's *pro se* allegations, and we find his claims to be meritless.