**Commonwealth v. Simmons**

*Patrick Kiniry* and *Gary Costlow,* assistant district attorneys, for the Commonwealth.

*Michael Filia* and *Kenneth Sottile,* for defendant.

*Michael Sahlaney,* for intervenor, Johnstown Tribune Publishing Co.

*Michael L. Stibich,* for intervenor, WJAC Inc.

SWOPE, *J.,* December 21, 1992—This case is before the court on the petitions of the Johnstown Tribune Publishing Co. and WJAC Inc. to intervene in the captioned criminal proceeding to oppose closure of a suppression hearing scheduled before the court for December 22, 1992. A hearing was held before the court on December 9, 1992, at which time arguments of counsel and testimony by the media were heard.

I

The defendant, Ernest J. Simmons, has been charged with the first degree murder of Anna Knaze. Ms. Knaze was an 80-year-old woman who was brutally beaten and strangled in her home in the course of a burglary and robbery. Moreover, the defendant has been charged with rape in connection with a sexual assault on a 62-year-old neighbor of Ms. Knaze, that occurred 14 hours after the murder.

On October 26, 1992, the Commonwealth made an application for omnibus pre-trial relief and pre-trial conference. The application sought to address a number of issues relating to the trial of the two sets of charges. Specifically, the court was asked to deal with the admissibility of statements, prior record and tape recordings.

At a pre-trial conference held on November 24, 1992, the court reserved consideration of the evidentiary issues for a hearing to be held December 22, 1992.

At the November 24th pre-trial conference, counsel for defendant moved for the court to close the December 22nd pre-trial conference to the public and the media. The Commonwealth concurred with defendant's request for closure. The court indicated that it was inclined to grant the motion for closure, in light of the extensive publicity focused on the case thus far and a concern for defendant's right to a fair trial.

Members of the media, present at the November 24th conference, voiced their objection to closure of the December 22nd conference, which would in essence be a suppression hearing. The court withheld ruling on the closure issue to give the public an opportunity to file petitions to intervene and oppose closure. The court granted a hearing to the petitioners, held December 9, 1992.

Petitioners argue that the Pennsylvania Constitution embodies an unqualified right of public access to all criminal pre-trial and trial proceedings. In the alternative, they maintain that the public's right of access to the suppression hearing does not impinge on defendant's right to a fair trial, or that if it does there exist reasonable and efficacious alternatives to closure that would safeguard defendant's rights. After painstaking review of the law and the record, the court cannot agree with the petitioners.

## II

The court recognizes the petitioners' right to intervene in this case to oppose the motion to close the pre-trial

conference scheduled for December 22, 1992. The law of Pennsylvania permits such petitions as an appropriate means of raising the public's right of access to attend and to obtain information regarding criminal proceedings. See *Commonwealth v. Fenstermaker,* 515 Pa. 501, 504 n.1, 530 A.2d 414, 416 n.1 (1987), citing, *Capital Cities Media Inc. v. Toole,* 506 Pa. 12, 22-3, 483 A.2d 1339, 1344, (1984); *Commonwealth v. Hayes,* 489 Pa. 419, 414 A.2d 318, *cert. den.,* 449 U.S. 992 (1980).

## III

The instant case brings into sharp contrast the ongoing conflict, that has become so prevalent in this age of extensive media coverage, between the public's right of access to criminal pre-trial and trial proceedings and a defendant's right to a fair trial. The court readily acknowledges the salutary function the media fulfills as "the handmaiden of effective judicial administration, especially in the criminal field ... [as it] guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism." *Sheppard v. Maxwell,* 384 U.S. 333, 350, 86 S.Ct. 1507, 1515 (1966). Furthermore, the right of public trial in criminal proceedings has a long, rich history with its origins in the mistrust of secrecy created by the old English Star Chambers.[1]

---

1. For an exhaustive analysis of the history of the public trial and public access to criminal proceedings, see Justice Blackmun's dissenting opinion in *Gannett Co. Inc. v. DePasquale,* 443 U.S. 368, 407-434, 99 S.Ct. 2898, 2921-32 (1979).

Moreover, no court has ever held the public's right of access is absolute. Indeed, the U.S. Supreme Court and the Pennsylvania Supreme Court have held that public right of access to the courtroom is qualified by the right of a defendant to a fair trial. See *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613 (1982); *Richmond Newspapers Inc. v. Virginia,* 448 U.S. 500, 581 n.18, 100 S.Ct. 2814, 2830 n.18 (1980); *Gannett,* 443 U.S. at 399, 99 S.Ct. at 2915 (1979), (Powell, J. concurring); *Hayes,* 489 Pa. at 449, 414 A.2d at 333 (1980); *Philadelphia Newspapers Inc. v. Jerome,* 478 Pa. 484, 387 A.2d 425 (1978). See also, *Commonwealth v. Buehl,* 316 Pa. Super. 215, 462 A.2d 316 (1983); *Commonwealth v. Roth,* 37 D.&C.3d. 207, 208 (1985); *State v. Williams,* 459 A.2d 641 (N.J. 1983).

Petitioners rely on the seven-paragraph concurrences of Justices Larsen and Flaherty, in *Hayes,* for support of the public's unqualified right of access to criminal proceedings. *Hayes,* 489 Pa. at 438-39, 414 A.2d at 328. It is asserted that the language, "All courts shall be open," found in Article I, section II of the Pennsylvania Constitution creates a right of unqualified access to the courts. Article I, section 9 of the State Constitution guarantees a defendant the right to a "speedy public trial by an impartial jury of the vicinage." It is conceivable that section II trumps the defendant's rights provided in section 9. However, the Supremacy Clause of the federal Constitution prohibits any state law that impinges on a defendant's 6th and 14th Amendment rights to a fair trial

by an impartial jury. *U.S. Constitution,* Article 6, clause 2. Therefore, to the extent that public access secured by the Pennsylvania Constitution endangers a defendant's rights, that access must be denied.

Clearly the law of the United States and the Commonwealth requires this court to counterbalance the public's constitutional interest in access to all pre-trial proceedings in the prosecution of a criminal case with a defendant's constitutional right to a trial before an impartial jury.

## IV

Pa.R.Crim.P. 323(f), providing for the suppression of evidence, states: "The [suppression] hearing, either before or at trial, ordinarily shall be held in open court.... In all cases the court may make such order concerning publicity of the proceedings as it deems appropriate under Rules 326 and 327." Rule 326 provides that in widely-publicized cases the court "may issue a special order governing such matters as ... likely to interfere with the rights of the accused to a fair trial by an impartial jury."

It is this Sixth Amendment right to a fair trial that is of great concern to the court. This right is so basic to our jurisprudence that it has been called "the most fundamental of all freedoms." *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 585, 49 L.Ed.2d 683, 713 (1976), quoting, *Estes v. Texas,* 381 U.S. 532, 540, 14 L.Ed.2d 543 (1965). The requirement of fairness to a defendant, particularly with regard to jury impartiality, "is heightened

in cases in which the defendant faces death. The death penalty is a categorical imperative for trial fairness." *Williams,* 459 A.2d at 652, citing, *Beck v. Alabama,* 447 U.S. 625, 637-38, 100 S.Ct. 2382, 2389-90 (1980).

Ultimately the "trial court bears the primary responsibility for striking the proper balance, and 'must take strong measures to ensure that the balance is never weighed against the accused,'" when addressing the problem of extensive pre-trial publicity. *United States v. Martin,* 746 F.2d 964, 973 (3d Cir. 1984), quoting, *Sheppard,* 384 U.S. at 362, 86 S.Ct. at 1522.

There is no serious doubt that pre-trial publicity can destroy the fairness of a criminal trial. *Nebraska Press,* 427 U.S. at 587, 49 L.Ed at 714. The closure of a criminal proceeding is well within the discretion of the trial court, so long as closure is justified by a compelling governmental interest and is narrowly tailored to serve that interest. See *Commonwealth v. Murray,* 348 Pa. Super. 439, 449, 502 A.2d 624, 629 (1985), citing, *Commonwealth v. Cantakos,* 499 Pa. 340, 354 n.4, 453 A.2d 578, 585 n.2 (1982).

The trial court is obliged to articulate for the record the factors taken into consideration in reaching a determination to close a proceeding. *Fenstenmaker,* 515 Pa. at 514, 530 A.2d at 421. Unfortunately, appellate courts have yet to settle this area of law and enunciate the factors which a court must consider before granting closure.

In view of the unsettled state of the law, this court adopts the four prong test articulated by Justice Kauffman

in his concurring opinion in *Hayes*. The Kauffman test provides vigorous standards for the protection of the public's right of access, though such stringency may not be constitutionally required. Justice Kauffman insisted that the defendant show:

(1) There exists a substantial probability of irreparable damage to his fair trial right if the proceeding is conducted in public.

(2) There is a substantial probability that alternatives to closure will not adequately protect his right to a fair trial.

(3) There is a substantial probability that closure will effectively protect against the perceived harm.

(4) The extent to which closure is necessary to ensure a fair trial.[2] *Hayes*, 489 Pa. at 453, 414 A.2d at 335.

## A

This court, after giving careful consideration to the evidence adduced at the December 9, 1992 hearing, finds, that with substantial probability, defendant will suffer irreparable harm to his Sixth Amendment right to a fair trial if the suppression hearing is open to the public. The record shows that this case has been the subject of considerable print and electronic media coverage. Moreover, the media coverage will continue and intensify as the case gets closer to trial.

---

2. Justice Kauffman would seem to have derived this test from Justice Powell's concurring opinion in *Gannett*, 443 U.S. at 400-401, 99 S.Ct. at 2916.

Petitioners argue that there is no need to close the hearing because the proverbial horse is out of the barn, in that the issues to be addressed at the hearing are already in the public domain. Concededly, the media has sketched an outline with regard to the admission of statements, prior record and tape recordings. The court believes that defendant will not be harmed by the information extent now in the public domain, but by the release of additional horses out of the barn.

At the intervention hearing, the Commonwealth indicated quite clearly, that at the suppression hearing areas of the case would be brought to the fore which had not been there before, and that "detailed discussions of other incidents" and other details will be required. Trans. p.74 and 75. For instance, the court understands that for the defendant's prior record to be admissible the Commonwealth may have to satisfy the rigorous requirements of *Commonwealth v. Bryant*, 531 Pa. 147, 611 A.2d 703 (1992). Furthermore, the record is unclear whether the tape recordings have ever been made public or what the circumstances were surrounding the rape statements. Therefore, without reciting or detailing the prejudicial evidence to be introduced at the hearing, since doing so would defeat the very purpose of closure, the court is satisfied that new information will come out at the hearing, that may potentially be highly prejudicial.

It is well recognized that the "most damaging of all information from outside the courtroom comes from the pre-trial suppression hearing." *Jerome,* 478 Pa. at 505, 387 A.3d at 436. Moreover, a "trial court's ability to afford the accused a fair trial is substantially threatened where ... information considered at the suppression hearing

becomes public knowledge prematurely." *Id.* This court is gravely concerned that information used in evaluating evidence or evidence that is ultimately suppressed will enter the public domain, thereby prejudicing potential jurors. Reporter Sandra Reabuck testified unequivocally that the specifics of the suppression hearing would be published and used as a foundation for future news stories. Of additional concern is that the public will misconstrue reports of the court's ruling, as a ruling on its credibility. Thus, the court agrees that "[e]xperience has plainly demonstrated that premature disclosure of pre-trial suppression material creates a heavy and unnecessary burden upon the judicial process and that defendant would, with substantial probability, be irreparably and adversely harmed by it." *Jerome,* 478 Pa. at 513, 387 A.2d at 440.

### B

The court finds that the defendant has established that there is a substantial probability that alternatives to closure will not adequately protect his right to a fair trial. In evaluating this prong of the test, a court is obliged to examine the viability of "continuance, severance, change of venue, change of venire, voir dire, peremptory challenges, sequestration, and admonition of the jury." *Hayes,* 489 Pa. at 452, 414 A.2d at 335.

Continuance of defendant's trial will not provide an adequate remedy for the protection of his rights. Testimony at the hearing indicated that immediately preceding the trial the media would publish articles outlining the history of the case. Hence, the effectiveness of a cooling off period would be counteracted by media coverage reigniting the extensive publicity. Furthermore, this court

must concern itself with the 180-day and 360-day rules, with regard to defendant's constitutional right to a speedy trial.

Severance is not an adequate remedy in this case, as there is no part of the case that, if severed, would mitigate the harm to defendant's rights. The two sets of charges are so interrelated, the facts in one would come out at the trial of the other.

Change of venue or change of venire are not reasonable alternatives in this case. Once the information disclosed at an open suppression hearing is part of the public domain, this pre-trial publicity is likely to follow the case to the new venue or source of venire. *Jerome*, 478 Pa. at 511, 387 A.2d at 438. If the court did change venue or venire, the publicity would simply surface in those communities. *State v. Couture*, 435 A.2d 369 (Conn. Super. 1981). In addition, when the venue is changed, the defendant is forced to give up his right to a trial in the locality of the crime, as guaranteed by Article I, section 9 of the Pennsylvania Constitution. See also, *Dickinson Newspapers Inc. v. Jorgensen*, 338 N.W.2d 72, 80 (N.D. 1980). Furthermore, Cambria County faces serious budgetary constraints in this recessionary period and nominal economic growth in the region. Therefore, the exorbitant costs of change of venue or venire place a severe financial burden on the county. See *Roth*, 37 D.&C.3d at 210; *Dickenson*, 338 N.W. at 80.

Nor will voir dire, peremptory challenges, sequestration, or jury admonitions sufficiently protect defendant's rights to a fair trial. This court finds it impossible to believe that with all the past pre-trial and anticipated future pub-

licity, the "bell can be un-rung." In this case, as in *Roth*, the "extent of voir dire and admonition necessary to accomplish the goal of fairness is likely to backfire in that jurors' attention will be overly directed to the fact of the publicity," and the many details reported that will be divulged at the suppression hearing. *Roth*, 37 D.&C.3d at 210. Further, sequestration is an effective technique to protect jurors from trial publicity, but no jury has been impanelled nor is one expected to be until March. Moreover, effectiveness of peremptory challenges depends on the quality of the voir dire and the absolute frankness of potential jurors in responding to questions, which would be suspect in this case. See *Dickenson*, 338 N.W.2d at 80. Assuming arguendo that evidence suppressed at the hearing is disseminated to the public and the impanelled jury is able to disregard it in arriving at its verdict, the court has grave reservations as to the ability of jurors, exposed to the pre-trial publicity, to disregard that information in its penalty deliberations. Because the defendant faces the death penalty, this court must zealously protect his rights. As there are no effective alternatives to closure, the court finds that this method efficaciously protects his right to a fair trial.

## C

The court is satisfied that defendant has met his burden of demonstrating that closure will be effective in protecting against the perceived harm. The Supreme Court has recognized that information publicized during a pre-trial proceeding may never be altogether kept from potential jurors and that closing the proceeding "is often one of the most effective methods that a trial judge can employ to attempt

to insure that the fairness of a trial will not be jeopardized." *Gannett,* 443 U.S. at 378, 99 S.Ct. at 2905. Necessarily, the court cannot predict the future. However, since much of the prejudicial information which is likely to be presented at the hearing has not yet become public, the irreparable harm to defendant's rights can be averted by keeping this information sealed.

## D

The final prong of this analysis requires the court to narrowly tailor the remedy to give full effect to the public's right of access and defendant's right to a fair trial. Consequently, as the court finds closure to be the most effective way to protect defendant's rights from being affected by pre-trial publicity, the December 22, 1992 hearing is to be closed to the public and the transcript sealed. The transcript is to be unsealed and available to the public once the danger to defendant's rights has passed. Therefore, the transcript will be unsealed after the jury is impanelled prior to trial. Once the jury is impanelled, jurors can be shielded from publicity through a sequestration order. This is the most narrowly drawn solution that gives effect to the constitutional values at conflict.

Accordingly, the following order is entered:

## ORDER

And now, December 21, 1992, it is hereby ordered and decreed that petitioners' motions to open proceedings is denied.

It is further ordered and decreed, that the suppression hearing in this case is to be closed to the public and the transcript sealed until the jury in this case is impanelled.

The court is of the opinion that its order in this matter involves a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from this order may ultimately resolve the issues of the parties.