**COMMONWEALTH of Pennsylvania,** **Appellee**

v.

**Jaquil ATKINSON, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 19, 2009.

Filed Dec. 10, 2009.

Reargument Denied Feb. 16, 2010.

Joseph M. Cosgrove, Forty Fort, for appellant.

Frank P. Barletta, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellee.

BEFORE: GANTMAN and FREEDBERG, JJ., and McEWEN, P.J.E.

OPINION BY FREEDBERG, J.:

¶ 1 This matter is before the Court on Jaquil Atkinson's appeal from an order entered by the Court of Common Pleas of

Luzerne County on August 30, 2007, which denied Appellant's pre-trial motion for suppression of evidence and to quash the information. We affirm the suppression court's order.

¶ 2 A criminal complaint charging manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance; use or possession with intent to use drug paraphernalia; conspiracy to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance; possession of a controlled substance; and tampering with or fabricating physical evidence was filed against Appellant on January 31, 2005. After various delays and continuances for over a year, a hearing on Appellant's pre-trial motion was held June 28, 2007. At the hearing, the Commonwealth presented testimony from an alleged co-conspirator, who was incarcerated in state prison, by use of a two-way videoconferencing system. During the hearing, Appellant objected because the witness was not present in the courtroom to testify. He renewed his objection when the witness was allowed to identify Appellant.

¶ 3 On August 30, 2007, the suppression court denied Appellant's motion. On September 7, 2007, the suppression court certified for immediate appeal Appellant's issue regarding the use of the videoconferencing system to present testimony, finding that it was a "controlling question of law as to which there is a substantial question for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter." Suppression Court Order, 9/7/2007, *citing* 42 Pa.C.S.A. § 702(b). On November 21, 2007, this Court denied Appellant's petition for permission to appeal. Appellant appealed to the Pennsylvania Supreme Court, which granted his petition for allowance of appeal on July 11, 2008. The Supreme Court remanded the matter to this Court, ordering us to address the following issue: "Whether the trial court erred in finding that testimony of a prosecution witness and his identification of [Appellant] at a suppression hearing via videoconferencing equipment was not prejudicial to [Appellant's] right to confrontation and was thus constitutional?"

¶ 4 The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ..."[1] Article 1, Section 9 of the Pennsylvania Constitution provides: "In all criminal prosecutions the accused hath a right ... to be confronted with the witnesses against him...."[2] With regard to the Confrontation Clause, the Pennsylvania Constitution provides a criminal defendant with the same protection as the Sixth Amendment; thus, we will address Appellant's challenges under each Constitution simultaneously. *See Commonwealth v. Geiger,* 944 A.2d 85, 97 n. 6 (Pa.Super.2008), *appeal denied* 600 Pa. 738, 964 A.2d 1 (2009). When reviewing a question of law, our standard of review is *de novo,* and our scope of review is plena-

1. The Sixth Amendment's protections have been incorporated to apply to state prosecutions through the Due Process Clause of the Fourteenth Amendment. *See Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

2. The Pennsylvania Constitution previously required "face to face" confrontation, and under such provision, the use of videoconferencing as a means to present testimony was found to be unconstitutional. *See Commonwealth v. Ludwig,* 527 Pa. 472, 594 A.2d 281 (1991). The Pennsylvania Constitution was amended in 2003, removing the "face to face" language.

ry. *Commonwealth v. Crawley*, 592 Pa. 222, 924 A.2d 612, 614 (2007).

■ ¶ 5 The United States Supreme Court has described the purpose of the Confrontation Clause as follows:

The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. The word "confront," after all, also means a clashing of forces or ideas, thus carrying with it the notion of adversariness. As we noted in our earliest case interpreting the Clause:

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox* [*v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 39 L.Ed. 409 (1895) ].

As this description indicates, the right guaranteed by the Confrontation Clause includes not only a "personal examination," 156 U.S. at 242 [15 S.Ct. 337], but also "(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." [*California v.*] *Green*, [399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) ] (footnote omitted).

The combined effect of these elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings.

*Maryland v. Craig*, 497 U.S. 836, 845–846, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). *See also Commonwealth v. Robins*, 571 Pa. 248, 812 A.2d 514, 521 (2002).

■ ¶ 6 The right to confrontation applies at a suppression hearing, as in the instant matter. In *Commonwealth ex rel. Buchanan v. Verbonitz*, 525 Pa. 413, 581 A.2d 172 (1990) (plurality opinion), *cert. denied*, 499 U.S. 907, 111 S.Ct. 1108, 113 L.Ed.2d 217 (1991), it was stated that "the Pennsylvania Constitution mandates a criminal defendant's right to confrontation and cross-examination at the preliminary hearing." *Id.* at 175. *See also Commonwealth v. Hanawalt*, 419 Pa.Super. 411, 615 A.2d 432, 436 (1992) (discussing *Verbonitz* ). The *Verbonitz* plurality relied on *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), in which the United States Supreme Court found that while the rights to confrontation and cross-examination do not apply in a pre-trial detention hearing, "when a pretrial hearing takes the form of a preliminary hearing and thus, adversary procedures are used, '[t]he importance of the issue to both

the State and the accused justifies the presentation of witnesses and full exploration of their testimony on cross-examination'." *Verbonitz*, 581 A.2d at 175, *citing Pugh*, 420 U.S. at 120, 95 S.Ct. 854.

¶ 7 As with a preliminary hearing, a suppression hearing is an adversarial proceeding and a critical stage in a criminal proceeding. "A critical stage is a point in the proceeding at which substantive rights may be preserved or lost. There is no doubt that a suppression hearing is a critical stage since, if the suppression court determines that evidence is admissible, that determination is final, conclusive and binding at trial." *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101, 105 (1978) (internal citations omitted). Numerous constitutional guarantees apply to a suppression hearing because of its critical nature, including the right of the defendant to be present, *Commonwealth v. McLaurin*, 292 Pa.Super. 392, 437 A.2d 440, 445 (1981), the right of the public to attend, *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), and the right to counsel, *Holzer*, 389 A.2d at 105. In reviewing a case concerning the right of the defendant to be present, this Court stated that identification testimony given at a suppression hearing "was testimony which tended to show that the appellant had done the acts for which he was being tried, and therefore, a critical stage in the adjudicatory process for the accused." *McLaurin*, 437 A.2d at 444. The Court emphasized that the "denial of a motion to suppress evidence is a crucial step in a criminal prosecution: it may often spell the difference between conviction or acquittal." *Id.* at 445 (citations omitted). A suppression hearing is clearly an adversarial and critical stage of the criminal process, and it has many similarities to a bench trial. *Commonwealth v. Murray*, 348 Pa.Super. 439, 502 A.2d 624, 626–629 (1985). Because of the significance of the

issues involved and their impact on the outcome of the prosecution, a defendant's confrontation clause rights apply during a suppression hearing.

¶ 8 In *Maryland v. Craig*, the United States Supreme Court considered whether the Confrontation Clause of the Sixth Amendment prohibited permitting child victims to testify by one-way closed circuit television. *Id.* at 840, 110 S.Ct. 3157. The defendant argued that the Sixth Amendment required face-to-face confrontation and that anything less failed to satisfy the constitutional guarantee. However, the majority stated:

> We observed in *Coy v. Iowa* [487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988)] that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." This interpretation derives not only from the literal text of the Clause, but also from our understanding of its historical roots.
>
> We have never held, however, that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial.

*Craig*, 497 U.S. at 844, 110 S.Ct. 3157 (citations omitted).

¶ 9 The *Craig* Court went on to explain that "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 849, 110 S.Ct. 3157 (citations omitted) (emphasis in original); *Commonwealth v. Wilson*, 550 Pa. 518, 707 A.2d 1114, 1121 (1998) ("[W]e have accepted that the right to confrontation is not absolute."). The Court explained that the right to face-to-face confrontation may not be easily dispensed with. *Craig*, 497 U.S. at 850, 110

S.Ct. 3157. "[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850, 110 S.Ct. 3157. The Court also emphasized the importance of making a case specific, individualized determination of the necessity in order to dispense with face-to-face confrontation. *Id.* at 855–856, 110 S.Ct. 3157.

■ ¶ 10 Appellant argues that allowing the witness to testify via videoconferencing violated his Confrontation Clause rights because the witness was not physically present in the courtroom. The Commonwealth responds that there was no violation because the Pennsylvania Constitution was amended, removing the requirement of "face to face" confrontation. The Commonwealth relies on the statement in *Craig* that face-to-face confrontation is preferred, but not absolutely required. *Id.* at 849, 110 S.Ct. 3157.

¶ 11 The issue of presenting testimony by video has arisen most frequently with regard to testimony of child witnesses. The act entitled, "Recorded Testimony," 42 Pa.C.S.A. § 5984.1, provides that the testimony of a child victim or child material witness may be recorded for presentation in court in such a manner to ensure that the child cannot see or hear the defendant. This statute has been found to satisfy the Due Process and Confrontation Clauses under the United States and Pennsylvania Constitutions. *Geiger,* 944 A.2d 85. This Court found that the purpose of the Confrontation Clause was satisfied when the child testified under oath, the defendant was able to hear and see the child, the child was cross-examined, and the defendant was able to adequately communicate with his attorney. *Id.* at 95–97. Similar

child victim protection statutes have been deemed constitutional in other jurisdictions. *See, e.g., United States v. Garcia,* 7 F.3d 885 (9th Cir.1993); *United States v. Weekley,* 130 F.3d 747 (6th Cir.1997); *Lomholt v. Iowa,* 327 F.3d 748 (8th Cir. 2003).

¶ 12 In addition to child witness cases, there appear to be two situations in which courts have considered the use of video testimony for adult witnesses: when a witness is too ill to travel and when a witness is located outside of the United States. In *Horn v. Quarterman,* 508 F.3d 306 (5th Cir.2007), the Court of Appeals for the Fifth Circuit considered whether testimony by two-way closed-circuit television was permissible for a witness who was located out-of-state, was terminally ill, and was advised by doctors not to travel. *Id.* at 313–314. An attorney for the state and the defendant were with the witness when he testified; the defendant, jury, and court were able to see the witness testify; and the witness was able to see the defendant. *Id.* at 313. The Fifth Circuit held that *Craig* applied, and to justify overcoming the preference for face-to-face confrontation, a case-specific finding of necessity was required. *Id.* at 316–317. The court found that there was no Confrontation Clause violation because of the witness's illness and care was taken to preserve other aspects of the defendant's confrontation clause rights, such as the ability to view the witness's demeanor, the requirement that he take the oath before the jury, and subjecting the witness to cross-examination. *Id.* at 317. Addressing the defendant's argument that *Craig* applies only to the unique circumstances where a child will be traumatized if forced to testify in front of a defendant, the court stated:

> *Craig's* references to "an important public policy" and "an important state interest," are reasonably read to suggest a

general rule not limited to protecting child victims of sexual abuse offenses from the trauma of testifying in a defendant's presence. Rather, it is possible to view *Craig* as allowing a necessity-based exception for face-to-face, in-courtroom confrontation where the witness's inability to testify invokes the state's interest in protecting the witness—from trauma in child sexual abuse cases or, as here, from physical danger or suffering.

*Id.* at 319–320 (internal citations omitted).

¶ 13 In *Bush v. Wyoming,* 193 P.3d 203 (Wy.2008), the Supreme Court of Wyoming considered a similar situation. A witness suffered from numerous ailments and arrangements were made to have him testify from the local district attorney's office. *Id.* at 214. The witness's wife was also scheduled to testify from the district attorney's office, because of the stress she would suffer from having to leave her husband. The court, citing *Craig,* stated that while the Confrontation Clause preferred face-to-face confrontation, that "preference must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 214–215. The witnesses were sworn in; were subject to cross-examination; and were visible to the jury, defendant, and court. *Id.* at 216. The court found that under the circumstances, the defendant's confrontation rights were not violated by the use of video testimony in relation to the husband. However, the court found that the trial court erred in permitting his wife to testify via video because there was not a sufficient public policy concern to overcome the Confrontation Clause guarantees. *Id.*

¶ 14 In *United States v. Yates,* 438 F.3d 1307 (11th Cir.2006), the Eleventh Circuit considered the use of testimony presented by a two-way videoconferencing system. *Id.* at 1310. The case concerned the testimony of two essential witnesses who resided in Australia and refused to return to the United States for trial. *Id.* The video system allowed the witnesses to see the courtroom and everyone in the courtroom was able to view the witnesses, both of whom were cross-examined. *Id.* During the testimony, some technical difficulties occurred, including the witnesses being unable to see clearly. The camera operator was required to scan the courtroom and zoom in. *Id.* at n. 2. The court determined that the *Craig* test applied, and, therefore, there must be an important public policy and reliability to permit the use of video testimony. The *Yates* court found that the confrontation rights of the defendant were violated by the use of the video testimony. *Id.* at 1316. The court held:

> [U]nder the circumstances of this case, ... the prosecutor's need for the video conference testimony to make a case and to expeditiously resolve it are not the type of public policies that are important enough to outweigh the Defendant's rights, to confront their accusers face-to-face.

> The district court made no case-specific findings of fact that would support a conclusion that this case is different from any other criminal prosecution in which the Government would find it convenient to present testimony by two-way video conference. All criminal prosecutions include at least some evidence crucial to the Government's case, and there is no doubt that many criminal cases could be more expeditiously resolved were it unnecessary for witnesses to appear at trial. If we were to approve introduction of testimony in this manner, on this record, every prosecutor wishing to present testimony from a witness overseas would argue that providing crucial prosecution evidence and resolving the case expeditiously are important

public policies that support the admission of testimony by two-way video conference.

*Craig* requires that furtherance of the important public policy make it necessary to deny the defendant his right to a physical face-to-face confrontation. In this case, there simply is no necessity of the type *Craig* contemplates.

*Id. But see Harrell v. Butterworth,* 251 F.3d 926 (11th Cir.2001) (holding, in the context of a federal habeas corpus petition, that there was no violation of the Confrontation Clause where two witnesses located in Argentina were permitted to testify via satellite. The court found that the witnesses were essential to the case, but beyond the subpoena power of the court; that it was in the state's interest to expeditiously and justly resolve criminal cases; and that the testimony was reliable because of the oath, ability to observe by all parties, and cross-examination).[3]

¶ 15 In *Yates,* the prosecution argued that *Craig* applied only to one-way video conferencing, and the case before the court could be distinguished on the basis that a two-way video conferencing system was used. The Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have held that *Craig* applies to the use of two-way video testimony as well. *See Yates,* 438 F.3d at 1313–1314 (citing cases applying *Craig* in

the context of two-way video testimony and noting that of the courts that have ruled on the issue, only the Second Circuit refused to apply *Craig* in a two-way video setting. *See U.S. v. Gigante,* 166 F.3d 75 (2d Cir.1999)).

¶ 16 Applying the *Craig* test to the instant matter, we must determine whether there are both important public policy and indicia of reliability sufficient to trump Appellant's right to confrontation. In its brief, the Commonwealth cites *Craig* for the broad proposition that videoconferencing does not violate the Confrontation Clause,[4] without further discussion of the requirements of *Craig* or the circumstances presented in that case. Thus, the Commonwealth fails to advance any reasons in support of the use of videoconferencing. From our review of the transcript of the suppression hearing, it appears that the Commonwealth's main purpose in using the videoconferencing system was to expedite disposition.

¶ 17 We find that the use of the videoconferencing equipment violated Appellant's right to confrontation. No compelling state interest has been advanced. While efficiency and security are important concerns, they are not sufficient reasons to circumvent Appellant's constitutional right to confrontation. *See Melendez–Diaz v. Massachusetts,* 575 U.S.

---

**3.** *See also United States v. Abu Ali,* 528 F.3d 210 (4th Cir.2008) (allowing witnesses to testify via video from Saudi Arabia was in the interest of national security).

**4.** Plainly, videoconferencing may violate confrontation rights. *See* Pa.R.Crim.P. 119, which provides:

(A) *The court or issuing authority may use two-way simultaneous audio-visual communication at any criminal proceeding except:*
  (1) preliminary hearings;
  (2) proceedings pursuant to Rule 569(A)(2)(b);
  (3) trials;

  (4) sentencing hearings;
  (5) parole, probation, and intermediate punishment revocation hearings; and
  (6) *any proceeding in which the defendant has a constitutional or statutory right to be physically present.*
(B) The defendant may consent to any proceeding being conducted using two-way simultaneous audio-visual communication.
(C) When counsel for the defendant is present, the defendant must be permitted to communicate fully and confidentially with defense counsel immediately prior to and during the proceeding (underlining added).

———, 129 S.Ct. 2527, 2540, 174 L.Ed.2d 314, 330 (2009).

¶ 18 In the cases where videoconferencing was permitted, the policy concerns were more compelling; for example, severe emotional damage to a child victim or testimony that would otherwise not be taken because the witness is terminally ill. Clearly, having prisoners testify by video is a more convenient method, considering the logistics associated with transporting a prisoner. However, convenience and cost-saving are not sufficient reasons to deny constitutional rights. *See e.g., Murray,* 502 A.2d at 626–629 (finding that security concerns were an insufficient reason to order closure of a preliminary hearing in light of the constitutional guarantee of a public trial); *Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653, 657 (1974) (internal quotations and citations omitted) (finding business records to be inadmissible hearsay because "[t]he constitutional right of confrontation and cross-examination ... cannot be sidestepped because it happens to be convenient for one of the parties. The difficulty of obtaining witnesses is not sufficient grounds for liberalizing an exception to the hearsay rule if the effect of such liberalization is to deny an accused a fair trial. . . . [E]xpediency is not a sound ground upon which a denial of a constitutional right may be based.").

¶ 19 Further, while the suppression court did allow defense counsel to argue objections regarding the use of video testimony, no hearing was held on the matter and no case-specific findings were made regarding the necessity of videoconferencing in this case. Under 42 Pa.C.S.A. § 5984.1, the statute allowing a child to testify by video in some circumstances, the trial court is required to "determine, based on evidence presented to it, that testifying in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child victim or child material witness suffering serious emotional distress that would substantially impair the child victim's or child material witness's ability to reasonably communicate." 42 Pa.C.S.A. § 5984.1(b). Similarly, in the instant case, there should have been an evidentiary hearing to determine if video testimony was warranted based on the specific facts relating to an individual witness. Thus, in *Yates,* the Eleventh Circuit stated that generally a trial court must hold a hearing to determine whether it is essential in the particular case to deny a defendant his constitutional rights in order to further a compelling state interest. *Yates,* 438 F.3d at 1315. Here, the suppression court did not hear evidence on why video testimony was needed in this specific instance or what governmental interest it would be furthering. There was no indication that there were any special circumstances in this case that required departure from the preference for actual confrontation enacted in our Federal and Commonwealth Constitutions.

¶ 20 In *Yates,* the Eleventh Circuit stated that "[t]he simple truth is that confrontation through a video monitor is not the same as physical face-to-face confrontation . . . . the two are not constitutionally equivalent. The Sixth Amendment's guarantee of the right to confront one's accuser is most certainly compromised when the confrontation occurs through an electronic medium." *Yates,* 438 F.3d at 1315. We agree and find that the use of the two-way video system violated Appellant's Confrontation Clause rights.

¶ 21 However, that does not end our inquiry. The United States Supreme Court has stated:

> We have recognized that other types of violations of the Confrontation Clause are subject to that harmless-error analy-

sis and see no reason why denial of face-to-face confrontation should not be treated the same. An assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, ..., had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence.

*Coy v. Iowa*, 487 U.S. 1012, 1021–1022, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) (internal citation omitted).

Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hutchinson*, 571 Pa. 45, 811 A.2d 556, 561 (2002), *cert. denied*, 540 U.S. 858, 124 S.Ct. 159, 157 L.Ed.2d 105 (2003), *quoting Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344, 350 (1999), *cert. denied*, 528 U.S. 1082, 120 S.Ct. 804, 145 L.Ed.2d 677 (2000).

■■■■ ¶ 22 "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 874 A.2d 108, 115 (Pa.Super.2005), *quoting Commonwealth v. LaMonte*, 859 A.2d 495, 499 (Pa.Super.2004).

[W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Jones*, 874 A.2d at 115.

¶ 23 Instantly, the police stopped the vehicle after the driver performed an abrupt right turn without signaling.[5] When the officer approached the vehicle, he detected the odor of marijuana emanating from the interior of the vehicle and requested back up. The officer asked the driver to exit the vehicle, and the driver signed a "Consent to Search" form. The remaining passengers stepped out of the vehicle, and the police searched the vehicle. The police located two large duffle bags in the backseat of the vehicle, and no one claimed ownership of the bags. Inside the duffle bag, the police found a shoebox containing a pair of boots. When the police searched the boots, they found a bag of chips covered in black pepper, and inside the chip bag police found crack cocaine. The police arrested Appellant and the other occupants of the vehicle. At the station, police advised Appellant of his *Miranda* rights, and Appellant signed a waiver of said rights. During questioning, Appellant stated that he owned the bag of chips used to hide the narcotics, but not the narcotics.

¶ 24 The suppression court found the two testifying police officers credible. The initial vehicle stop was lawfully based on a traffic violation, failure to signal. The police properly obtained a voluntary, written consent from the driver to search

5. 75 Pa.C.S.A. § 3334 (Turning movements    and required signals).

the vehicle after detecting the odor of marijuana in the vehicle. The occupants of the vehicle had no reasonable expectation of privacy in the entire passenger compartment. *Commonwealth v. Viall,* 890 A.2d 419, 423 (Pa.Super.2005). The police found two unclaimed duffle bags in the passenger compartment. The duffle bags were considered abandoned, and the occupants voluntarily relinquished any interest in them.[6] The police properly and lawfully conducted a warrantless search of the duffle bags and discovered a chip bag containing narcotics. *See Commonwealth v. Yedinak,* 450 Pa.Super. 352, 676 A.2d 1217, 1220 (1996) (affirming denial of suppression motion and stating that police "were free to search any containers within the vehicle that could reasonably contain narcotics" once the appellant consented).

¶ 25 Further, the police advised Appellant of his constitutional rights. Appellant knowingly and intelligently waived his rights in writing. During questioning, Appellant acknowledged ownership of the chip bag used to hide the narcotics. Based on the credible testimony of the two police officers, the suppression court denied Appellant's motion to suppress the narcotics found in the chip bag, and Appellant's subsequent statement regarding ownership of the bag.

¶ 26 Importantly, the two-way video testimony at issue pertained first to the reason for the initial stop, which was cumulative of the officer's testimony. The witness also testified to the relationship between Appellant and the narcotics before the vehicle was stopped, but the testimony was not related to the driver's consent to the vehicle search that led to the discovery of the narcotics, or the waiver of Appellant's rights before making an incriminating statement. Thus, we conclude that the Sixth Amendment violation that occurred was harmless error, as the result of the suppression hearing would have been the same without the unconstitutional video testimony.

¶ 27 Order affirmed. Case remanded. Jurisdiction relinquished.

---

**6.** When Appellant was asked if he owned the duffle bags, he specifically stated he did not.