J. A01001/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                            :          PENNSYLVANIA
               v.           :
                            :
JESSE LEWIS,                :         No. 985 WDA 2013
                            :
          Appellant     :


Appeal from the Judgment of Sentence, May 29, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0013110-2011


BEFORE: FORD ELLIOTT, P.J.E., DONOHUE AND ALLEN,* JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED MAY 05, 2015**

Jesse Lewis appeals from the judgment of sentence entered on May 29, 2013, in the Court of Common Pleas of Allegheny County.

The facts, as aptly summarized by the trial court, are as follows.

> Office[r] Matthew McCarthy testified that he was on duty on March 17, 2011 when he was dispatched to 255 East Ohio Street on a report of four or five individuals fighting. While he was en route, he heard two gunshots. Upon arrival, at approximately 2:50 a.m., he observed the victim, Lakisha Robinson ["the victim"], lying on the street, surrounded by two females who were crying and yelling. [The victim] was pronounced dead at the scene shortly thereafter. Officer McCarthy also encountered the second victim, Richard Edge, at the scene. Edge had a bullet wound to his left elbow. Edge initially refused medical attention and was unwilling to identify his shooter.
>
> Nicole Orwik, [the victim's] best friend, testified that on March 17, 2011, she and two friends

---

* Allen, J. did not participate in the consideration or decision of this case.

([the victim] and Patrice "Trice" Hammond) went to Peanutz, a local bar, at around 11:30 p.m. Orwik stated that she saw two men that she knew in the bar: Edge, whom she called "RJ," and Appellant, Jesse Lewis, whom she referred to as "Little Man." Orwik said that she had known Appellant for twelve years and that he was friends with her baby's father. [The victim] and Orwik eventually left the bar and returned to [the victim's] apartment. A short time later, [the victim] left the apartment to check on Hammond. When [the victim] did not return after ten to fifteen minutes, Orwik stepped out of [the victim's] dwelling and saw [the victim] fighting.

Orwik testified that [the victim] fought with Sakisha Morant. . . Morant and Appellant have a child together. Orwik broke up the fight but Morant and [the victim] continued to argue. Orwik testified that she then saw [the victim] walk up the sta[i]rs toward them and heard a shot shortly thereafter. Orwik attempted to leave the area with [the victim], but [the victim] collapsed, at which point Orwik became aware that [the victim] had been shot.

Footage from two surveillance cameras was introduced as evidence. During Orwik's testimony, she identified Appellant on the video recording as wearing a white shirt with stripes. She also pointed out on the video Appellant's extended hand holding an object and testified that is where the gunfire came from. Orwik testified that the individual seen on the video running away and throwing a gun was Appellant.

Richard Edge testified that he didn't remember seeing Appellant in the bar that night. Edge said he tried to break up a fight outside of the bar between Hammond and a woman named Lexie. [The victim] and Morant entered the melee and while Edge was trying to restore order, he heard two shots. After Edge heard the first shot, he turned and ran but was hit in the arm with the second shot as he was running away. Edge testified that he did not see who shot him. Edge said that the person in the

video in the white muscle shirt (the same person identified by Orwik) holding the gun shot him. Upon further review of the video, Edge testified that the same person who had shot him had jumped on his back earlier during the fight. At the time, Edge thought that the person on his back was a woman. Edge pushed the person in the muscle shirt away, as seen on the video. Both Edge and his brother Demitrius Edge identified Appellant from a photo array. Hammond also identified Appellant as the individual in the white t-shirt.

Derrick Cabel testified that he did not see any shots fired on March 17, 2011. However, he stated that he gave a recorded statement to the police contemporaneous to the incident describing what he observed. Officer James Smith later testified he interviewed Cabel and recorded his statement. In the interview, Cabel stated that after he heard the second shot, he looked over a wall he was hiding behind and saw Appellant with a gun pointed at Edge.

Sergeant Christina Davison responded to the dispatch call of shots fired in the area. As she was arriving at the scene, a short male in a white t-shirt and dark pants ran directly in front of her vehicle away from the area where the shots were fired. Sergeant Davison identified Appellant as that individual. She further stated that Appellant and the individual in the video were consistent in stature and clothing.

Officer Adam Nida testified that Appellant gave him the name of Darryl Strong when he was later arrested on an unrelated outstanding warrant. Forensic pathologist Dr. Abdulrezak Shakir testified that the cause of death of [the victim] was a gunshot wound to the trunk and the manner of death was classified as a homicide.

Trial court opinion, 4/7/14 at 3-6 (footnote omitted).

- 3 -

Appellant was charged with one count each of criminal homicide, criminal attempt (homicide), aggravated assault, person not to possess a firearm, and carrying a loaded weapon. Appellant was also charged with three counts of recklessly endangering another person ("REAP"); however, two counts of REAP were later withdrawn. Pursuant to an oral motion by defense counsel, Elbert Gray, Esq., the charge of possession of a firearm was severed to be tried non-jury concurrently. A jury trial commenced on February 4, 2013, and on February 28, 2013, appellant was found guilty of all charges. Appellant was sentenced to life imprisonment for first-degree murder with a consecutive period of 26 to 52 years on the remaining charges. At the conclusion of the sentencing hearing, Attorney Gray orally motioned to withdraw as counsel; the motion was granted and new counsel was appointed.

Appellant's post-sentence motions were denied on May 29, 2013. This appeal followed. The following claims have been presented on appeal:

1. Whether there was insufficient evidence to prove first-degree murder when the Commonwealth failed to prove that there was a specific intent to kill the victim?

2. Whether the trial court abused its discretion in overruling an objection to the testimony of Officer McCarthy concerning the speculative reasoning of Richard Edge's answers to the officer's questions?

3. Whether the non-jury trial was properly conducted when Appellant never knowingly, intelligently and voluntarily waived his right to

> a jury trial concerning the charge of persons not to possess a firearm?

Appellant's brief at 5.[1]

The first issue presented challenges the sufficiency of the evidence to support the conviction of first-degree murder. Appellant argues the Commonwealth failed to prove specific intent to kill. (***Id.*** at 15.)

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

---

[1] Additional issues presented in appellant's concise statement of matters complained of on appeal have been abandoned.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa.Super. 2011) (*en banc*), quoting *Commonwealth v. Hutchinson*, 947 A.2d 800, 805-806 (Pa.Super. 2008).

First-degree murder is an intentional killing, *i.e.*, a "willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(a) and (d). Specific intent to kill as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Briggs*, 12 A.3d 291, 342-343 (Pa. 2011). Pursuant to the doctrine of transferred intent, the intent to murder may be transferred where the person actually killed is not the intended victim. 18 Pa.C.S.A. § 303(b)(1).

Reviewing the record in the light most favorable to the Commonwealth, as opposed to the facts appellant argues in his brief, we find the Commonwealth clearly established specific intent. Appellant was identified in the fight on a surveillance video. Appellant was thrown off of Edge's back and seen using his hand to mimic firing a shot. Appellant then briefly left the area, returning moments later with a firearm. Witnesses identified appellant as pointing a gun at Edge, approaching Edge, and shooting at him. The victim, who was in the immediate vicinity, was shot in the abdomen, a vital part of her body, and this wound caused her death. *Briggs*, *supra* at 307. The evidence establishes appellant's specific intent to kill. *Commonwealth v. Devine*, 750 A.2d 899 (Pa.Super. 2000) (Devine's errant bullet killed a 15-year-old boy as he conducted a shootout

with two men he admitted to wanting to kill); ***Commonwealth v. Jones***, 610 A.2d 931 (Pa. 1992) (Jones and two companions missed intended victim with 20 shots, but were liable after killing two individuals, including a seven-year-old boy and injuring six others).  Thus, the evidence supports the jury's finding that appellant formed a specific intent to kill and, thus, is guilty of first-degree murder.

Next, appellant claims that the trial court erred by allowing Officer Matthew McCarthy to testify that Edge would not tell the officer who had shot him.  (Appellant's brief at 23.)  We agree with the Commonwealth that the officer's response that Edge "just wouldn't tell [him]" who shot him is not necessarily an opinion as to whether Edge knew the identity of the shooter.  (Commonwealth's brief at 12.)  Such a statement "does not necessarily imply that Edge knew or [did not] know [the shooter's] identity." (***Id.***)  As the trial court observed, it was established during cross-examination that Officer McCarthy was not testifying that Edge did not actually refuse to identify the shooter, but that it was the officer's impression that Edge was reluctant to cooperate with the police.  (Trial court opinion, 4/7/14 at 8.)  Moreover, such error was harmless as appellant does not dispute that he shot Edge, and both Edge and his brother identified appellant as the shooter from a photo array.  ***See Commonwealth v. Atkinson***, 987 A.2d 743, 751-752 (Pa.Super. 2009) (harmless error exists when "the error did not prejudice the defendant or the prejudice was

***de minimus***").  Thus, no prejudice resulted from the officer's statement on direct examination.

In his final issue, appellant contends that he did not validly waive his right to a jury, and therefore, the court was without jurisdiction to determine his guilt of persons not to possess a firearm.  (Appellant's brief at 26.)  This claim is waived as appellant did not present this challenge during trial.  Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").  ***See Commonwealth v. O'Donnell***, 740 A.2d 198, 207 (Pa. 1999) (only under capital relaxed wavier policy may the issue of an inadequate jury trial colloquy be reached for the first time on appeal); ***Commonwealth v. Gribble***, 863 A.2d 455, 469 (Pa. 2004) ("The Commonwealth correctly notes that neither O'Donnell nor appellant objected to the wavier colloquy at the penalty hearing, and that each therefore waived any direct challenge to its sufficiency . . . The Commonwealth also correctly notes that O'Donnell prevailed upon her waived claim on direct appeal only because she enjoyed the benefits of the then-available 'relaxed waiver' rule.").

Judgment of sentence affirmed.

Allen, J. did not participate in the consideration or decision of this case.

J. A01001/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  5/5/2015