J-S08009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ADRIAN CARLOS PADILLA | |
| Appellant | No. 1463 MDA 2020 |

Appeal from the Judgment of Sentence September 28, 2020
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0004011-2019

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

DISSENTING MEMORANDUM BY STABILE, J.:**FILED: December 15, 2021**

I believe that Appellant raises a properly preserved and meritorious argument under the Confrontation Clause. To address the Majority's finding of waiver, I must begin with an overview of a criminal defendant's right to confront adverse witnesses. The federal confrontation clause guarantees an accused the right "to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. Article I, section 9 of the Pennsylvania Constitution uses identical language. The United States Supreme Court has addressed the Confrontation Clause as follows:

> The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. The word 'confront,' after all,

---

[*] Former Justice specially assigned to the Superior Court.

*also* means a clashing of forces or ideas, thus carrying with it the notion of adversariness. As we noted in our earliest case interpreting the Clause:

'The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' **Mattox** [**v. United States***, 156 U.S. 237, 242–243 […] (1895)].

As this description indicates, the right guaranteed by the Confrontation Clause includes not only a 'personal examination,' 156 U.S. at 242 […], but also '(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.' [**California v.**] **Green**, [399 U.S. 149, 158, […] (1970)] (footnote omitted).

The combined effect of these elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings.

***Commonwealth v. Atkinson***, 987 A.2d 743, 746 (Pa. Super. 2010) (**quoting *Maryland v. Craig***, 497 U.S. 836, 845-46 (1990)), ***appeal denied***, 8 A.3d 340 (Pa. 2010).

In ***Coy v. Iowa***, 487 U.S. 1012 (1988), the prosecution used a screen between defendant and sexual assault victims that blocked the defendant

completely from the victims' sight but allowed the defendant to see the victims dimly and hear them. *Id.* at 1015. The prosecutor acted in accord with a state statute; there had been no individualized findings that the witnesses in *Coy* needed special protection. *Id.* at 1021. The defendant claimed the screen violated his right to a face-to-face confrontation. The Supreme Court held that the defendant's right to a face-to-face confrontation was violated. "A witness 'may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts.'" *Id.* at 1019 (quoting *Jay v. Boyd*, 351 U.S. 345, 375-76 (1956) (Douglass, J. dissenting)). "That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs." *Id.* at 1020.

In *Maryland v. Craig*, 497 U.S. 836 (1990), as in *Coy*, the witnesses were children testifying that the defendant sexually assaulted them. A Maryland statute permitted the children to testify by closed circuit television, outside the presence of the defendant, if the trial court determined that courtroom testimony would cause serious emotional distress to the point that the child could not communicate. *Craig*, 497 U.S. at 841. Unlike *Coy* therefore, the record in *Craig* contained individualized findings as to the necessity of the special arrangement. The Maryland statute at issue in *Craig* required such findings, whereas the Iowa statute at issue in *Coy* did not.

Pursuant to the statute and the trial court's findings, the prosecutor, defense attorney, and child witness went to a separate room while the judge, jury, and defendant remained in court and observed by closed-circuit television. *Id.*

The *Craig* Court found that this arrangement satisfied the Confrontation Clause. The Confrontation Clause does not guarantee criminal defendants "an *absolute* right to a face-to-face meeting with witnesses against them at trial." *Id.* at 844 (italics in original). Face-to-face confrontation will reduce the risk of a witness wrongfully implicating an innocent person, and therefore it "forms the core of the values furthered by the Confrontation Clause[.]" *Id.* at 846-47 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985) (*per curiam*)). But it is not "the *sine qua non* of the confrontation right[,]" which is "generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Id.*[1] The elements of a full and fair opportunity to confront an adverse witness include the witness's physical presence in the court room, testimony under oath, subjection to cross-examination, and observation of the witness's demeanor by the fact finder. *Id.* at 846.

---

[1] Thus, certain hearsay statements can be admitted even though the defendant cannot confront the declarant. *Id.* at 847-48.

The ***Craig*** Court concluded that "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial.'" ***Id.*** at 849 (quoting ***Ohio v. Roberts***, 448 U.S. 56, 63 (1980)) (emphasis added in ***Craig***). This preference "must occasionally give way to considerations of public policy and the necessities of the instant case." ***Id.*** (quoting ***Mattox v. United States***, 156 U.S. 237, 243 (1895)).

In ***Atkinson***, this Court applied the ***Craig*** test to the trial court's decision to permit the Commonwealth to use two-way videoconferencing to present the testimony of an incarcerated witness. ***Atkinson***, 987 A.2d at 745. The ***Atkinson*** Court noted that video testimony had been used for child witnesses (as in ***Craig***), international witnesses, and witnesses too ill to travel. ***Id.*** at 748. In ***Atkinson***, however, the Commonwealth advanced no reason for the video testimony other than expeditious resolution of the case. ***Id.*** at 749-50. Thus, there was no important policy rationale for diverging from the in person, face-to-face confrontation that the defendant would ordinarily receive. Further, there was no hearing and no case-specific findings regarding the necessity of videoconferencing. For these reasons, the ***Atkinson*** Court concluded that the defendant's Confrontation Clause[2] rights were compromised without justification. ***Id.*** at 751.

---

[2] The ***Atkinson*** Court noted that the Pennsylvania Confrontation Clause provides the same protection as its federal counterpart. ***Atkinson***, 987 A.2d at 745.

Against this backdrop, I turn to the Appellant's objections:

THE COURT:  Thank you.  If you would state your name for the record.

THE WITNESS:  Stephanie Ann Brown.

THE COURT:  Okay.  You may be seated.  You may proceed.

[THE PROSECUTOR]:  Thank you. **Ma'am, if you want to, you can remove your mask but you don't have to.**

THE WITNESS:  Okay.

[THE PROSECUTOR]: Okay.

DIRECT EXAMINATION

Q.    How do you know Kai Jackson?

A.    He is my grandson.

[DEFENSE COUNSEL]:  **Your Honor, I am going to object.  I would prefer that the witnesses be unmasked during the testimony.**

THE COURT:  Overruled.  Overruled.

N.T. Trial, 8/6/20, at 36-37 (emphasis added).  Brown's examination went on without further discussion of her mask.

The testimony of Kai Jackson began in similar fashion:

THE COURT:  Thank you.  You may be seated.  State your full name.

THE WITNESS:  Kai Jackson.

THE COURT:  How do you spell the first name?

THE WITNESS:  K-a-i.

THE COURT:  Thank you.  You may proceed.

[THE PROSECUTOR]:  Thank you.

DIRECT EXAMINATION

Q.   **Kai, if you want to remove your mask, you can, but you don't have to.**  Kai, how old are you today?

A.   Seventeen.

Q.   So last August, you're obviously 16.

[DEFENSE COUNSEL]:  **Again, Your Honor, objection to not being able to see the witness's face.**

THE COURT:  Overruled.

N.T. Trial, 8/6/20, at 43-44 (emphasis added).  Jackson's examination went on without further discussion of the mask.

Thus, Appellant lodged timely objections based on his inability to see the witness's faces.  As the Majority acknowledges, he followed up those objections up with a motion for mistrial, complaining of the face coverings and citing the Sixth Amendment.  As I have explained above, the federal Confrontation Clause and Article I, section 9 of the Pennsylvania Constitution both guarantee the right to a **face-to-face** confrontation.  Despite this, the Majority *sua sponte*[3] concludes that Appellant waived his Confrontation Clause argument, finding his objections insufficiently specific.  Majority Memorandum, at 9-12.  I disagree.  I believe Appellant's contemporaneous objections—that the COVID masks partially obscured witness's faces—left no

---

[3] The trial court's opinion addressed Appellant's argument on the merits, and the Commonwealth did not assert waiver in its brief to this Court.  Our Supreme Court recently reversed this Court for *sua sponte* finding waiver of a constitutional issue.  **Commonwealth v. Wolfel**, 233 A.3d 784 (Pa. 2020).

doubt as to the basis of his objection. The trial court could have, and in my view should have, corrected the problem before permitting the trial to continue. In straining to find waiver here, the Majority evades a difficult and important issue that deserves this Court's attention.

Moving on to the merits, the following considerations lead me to conclude that the trial court erred. Several courts have addressed the applicability of the Confrontation Clause where the witness wears a COVID mask. In **United States v. Crittenden**, 2020 WL 4917733 (M.D. Ga. 8/21/2020),[4] the government requested that testifying witnesses wear transparent face shields or remain behind plexiglass screens.

> Here, the mask requirement is necessary to further an important public policy: ensuring the safety of everyone in the courtroom in the midst of a unique global pandemic. Without this procedure, everyone in the courtroom would face the risk of being infected with a lethal virus. The Court's masking requirement is based upon the best available scientific information and advice. The Centers for Disease Control and Prevention ("CDC") strongly recommends that to avoid infection from the dangerous coronavirus, individuals should practice social distancing and wear masks over the nose and mouth. *Considerations for Wearing Masks*, Ctrs. for Disease Control and Prevention (updated Aug. 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html. The wearing of the mask not only protects the wearer of the mask, but more significantly, protects others who may be in the same room with the person. These precautions are particularly important inside of a building. The CDC also makes a distinction between "masks" and "face shields," which is what the Government recommends here. The CDC finds that face shields are not as effective as masks, and it does not recommend substituting face shields for

---

[4] I cite unpublished and/or extra-jurisdictional case law for illustration and persuasive authority.

> masks. Given the CDC recommendations, which are based on the best available science in this area, the Court finds that its social distancing and mask protocols are necessary and essential to protect the courtroom participants during a trial. The Court further finds that face shields and plexiglass screens are not an adequate substitute and standing alone do not provide reasonable protection for the trial participants. Thus a compelling policy reason exists for the mask requirement—protection of the health and safety of the trial participants and members of the public who may attend the trial.

*Id.* at *6 (footnote omitted). Thus, the **Crittenden** Court found an important policy justification and case-specific necessity for the COVID masks.

Regarding the **Craig** Court's elements of a full and fair confrontation (that witnesses should be present in the courtroom, testify under oath, and undergo cross examination, all while the fact finder can observe their demeanor), the only issue was the jury's observation of the witness's demeanor. *Id.* The Court concluded that masks covering the witness's mouth and nose did not deprive the defendant or the jury of the witness's demeanor. Much of a witness's demeanor is observable with a COVID mask covering the mouth and nose. Jurors can observe the eyes, posture, tone of voice, pace of speech, and any variances in any of these during testimony. In the words of the **Crittenden** Court, jurors "will be able to see the witnesses blink or roll their eyes, make furtive glances, and tilt their heads." *Id.* at *7; **see also United States v. James**, 2020 WL 6081501 (D. Az. 10/15/2020) (relying on **Crittenden** to hold that COVID masks satisfy an important policy and do not significantly interfere with the jury's ability to observe demeanor); **State v. Jesenya O.**, 493 P.3d 418 (Ct. App. N.M. 2021) (concluding that, while

observations of facial expressions are important in determining veracity the jurors' ability to observe a witness's body language and hear a witness's speech were sufficient to facilitate observation of the witness's demeanor).

*Crittenden*, *James*, and *Jesenya O.* found support in pre-pandemic cases permitting some obstruction of a witness's face. *See United States v. Jesus-Castenada*, 705 F.3d 1117 (9th Cir. 2013) (holding that the Confrontation Clause was satisfied even though the witness, a confidential informant, donned a wig and fake mustache); *Morales v. Artuz*, 281 F.3d 55 (2d Cir. 2002) (holding that the Confrontation Clause was satisfied where the witness, claiming she was nervous and shy, refused to remove a pair of dark sunglasses); *People v. Ketchens*, 2019 WL 2404393 (Cal. Ct. App. 6/7/2019) (holding that the Confrontation Clause was satisfied where the witness's religious headdress exposed both eyes and her nose). Other courts have found Confrontation Clause violations based on excessive obstruction of a witness's face. *See Romero v. State*, 173 S.W.3d 502 (Tex. Crim. App. 2005) (holding that no face-to-face confrontation occurs where the witness wears a disguise that conceals nearly all the witness's face); *People v. Sammons*, 478 N.W.2d 901 (Mich. Ct. App. 1992) (holding that a witness wearing a ski mask does not satisfy the Confrontation Clause).

In a pre-pandemic unpublished memorandum, this Court considered whether a scarf covering the witness's face, except for her eyes, violated the Confrontation Clause. *Commonwealth v. Smarr*, 179 WDA 2018, (Pa.

Super. 7/3/2019) (unpublished). The witness, who was the sole eyewitness to the murder, testified that she covered her face in observance of her Muslim religion. The witness said she "wears a face covering on Fridays, when she goes to a religious service, and 'whenever [she] feels like [she] want[s] to.'" *Id.* at *1 (brackets in original). In opposing the defendant's motion for a mistrial, the Commonwealth argued that jurors could observe the witness's demeanor "through her body actions, through her arm movements, her voice, frustration, lack of frustration, all of that came out with her when she testified on the stand. I think at different times on the stand she broke down into tears, she got upset. All of that was visible." *Id.* at *2. The trial court noted that the defendant and the jurors were seated "only feet" from the witness. *Id.* at *3.

This Court held that the Confrontation Clause was satisfied given that the defendant and the witness "were in the same room, sitting within a few feet of each other." *Id.* at *6. "No precedent has established that a witness's clothing or accessories renders a physical, in-court confrontation other than face-to-face, particularly where the clothing does not obstruct the witness's eyes, and we decline to do so under the facts of this case." *Id.* Likewise, protection of the witness's ability to wear her scarf in accordance with her religious practice furthered an important public policy. *Id.* at *7. The trial court conducted a hearing on that point and made a specific, individualized

finding that the mask was necessary, in accord with the Supreme Court's opinion in **Coy**.

In other pandemic-era cases, courts have chosen not to permit cloth COVID masks, relying on see-through plastic face shields and/or plexiglass barriers. In **United States v. Robertson**, 2020 WL 6701874 (D.N.M. Nov. 13, 2020), the District Court granted the defendant's unopposed motion to require testifying witnesses to remove their facemasks. The Court reasoned, "requiring testifying witnesses to remove their face masks in lieu of clear face shields does not create an unacceptable health risk given that they will be situated apart from other trial participants on the witness stand and given that they will be testifying from behind plexiglass." **Id.** at *2.[5] Similarly, in **United States v. Auzenne**, 2020 WL 6065556, (S.D. Miss. Oct. 14, 2020), witnesses were required to wear a cloth mask or plastic face shield except while speaking.[6]

---

[5] I observe that the **Jesenya O.** Court, on the other hand, refused to allow witnesses to substitute plastic face shields for cloth masks, noting the CDC's admonition that the face shields were less safe. **Jesenya O.**, 493 P.3d at 432.

[6] In a pandemic-era case not involving masks, the Montana Federal District Court in **United States v. Casher**, 2020 WL 3270451 (D. Mont. June 17, 2020) declined to quash several subpoenas, reasoning that the defendant's rights under the Confrontation Clause outweighed the witness's understandable reluctance to travel (one witness lived in Madison, Wisconsin and the other in Denver, Colorado). **Id.** at *1-3. The Court also declined to permit testimony by videoconference, concluding that it was not necessary to further a public policy under the **Craig** test. **Id.** at *2-3.

Instantly, the trial court's opinion provides the following description of the circumstances in the courtroom:

> Berks County, being ever cognizant of the right of the defendant to a speedy trial and prompt resolution of cases for victims, was one of the earliest counties to resume jury trials (on June 15, 2020). For the safety of all involved, jury selection was moved to an auditorium where potential jurors could be seated in a socially distant manner. For trial itself, only the largest courtrooms were utilized, which allowed for the jurors to be seated outside of the traditional jury box, so social distancing could be achieved. The jury was seated in the viewing gallery of the courtroom and spaced to allow for at least six feet between each juror and any participant. The witness was placed in the seat traditionally assigned to juror number 6 in the jury box to put them in a better viewing position for the jury, the defendant and defense counsel and the prosecution team. The witness is seated 11 (eleven) feet from the closest juror. The tables for the parties were repositioned to allow for social distance and to still give room for movement in the well of the courtroom to allow for evidence presentation and movement of attorneys during questioning or argument to the jury while still maintaining appropriate spacing. While seated, the tables had been turned so the attorneys and the defendant had a straight on view of the witness as well as the ability to view the jury during the trial.
>
> [Appellant's] trial was held on August 6, 2020 and procedures were evolving after each trial based on feedback from participants, jurors, and staff. Although ordered, a plexiglass barrier between the witness and jurors was not yet available at the time of [Appellant's] trial. Plexiglass barriers have since been installed. **The witness was asked by the assistant district attorney to unmask if they felt comfortable. The witness indicated he felt uncomfortable unmasking.** A contemporaneous objection was made by counsel and overruled. The witness testified with a mask over his nose and mouth. A microphone was placed directly in front of the witness and there were no indications that he could not be heard during his testimony.

Trial Court Opinion, 11/6/20, at 5-6 (emphasis added).

I make several observations based on the transcript of Appellant's objections (quoted above regarding the Majority's finding of waiver) and the portion of the trial court's opinion quoted immediately above. First, the witnesses were given a choice as to whether to remove their COVID masks. If COVID masks were necessary to protect the health of the witnesses or others present in the courtroom, no choice should have been given. Next, I take at face value the trial court's finding that a witness indicated that he was uncomfortable unmasking (see the bolded portion of the trial court's opinion quoted above). But the record contains no explanation of the basis for his discomfort, what led the trial court to believe he was uncomfortable, and whether anything could have been done to make him comfortable removing his mask.[7] Finally, the trial court noted the need for speedy trials and prompt resolution of cases for victims, and that plexiglass barriers had been ordered but were not installed as of the time of Appellant's trial. I find this rationale problematic. This Court explained in *Atkinson* that the expeditious resolution of a case does not, in and of itself, justify a constraint on the defendant's right to confront witnesses. *Atkinson*, 987 A.2d at 749. I do not believe that Appellant's ability to confront unmasked witnesses should have been

---

[7] I do not opine on whether and under what circumstances a witness's fear of unmasking would satisfy the necessity test under *Craig*, nor do I opine on whether see-through plastic face shields, if they were offered and the witnesses were willing to wear them, would have satisfied the Confrontation Clause in this case.

contingent on whether the county was able to obtain and install plexiglass barriers prior to his trial date.

I now turn to the trial court's rationale for allowing the witnesses to remain masked:

> Allowing the witness to wear a facemask was necessary to further an important public policy regarding the potential spread of the novel Corona virus 19. This is an individualized finding of necessity in unprecedented time to assure for the comfort and safety of both witnesses, jurors and others present in the courtroom. If the witness had been required to unmask, the discomfort from the feeling of being at risk for exposure, could have affected the demeanor of the witness. The reliability of the testimony from the witness was otherwise assured.

> The jury was amply able to observe the demeanor of the witness. The witness was physically present in front of [Appellant] during testimony made under oath. The witness was subject to cross examination. The jury was present when the witness indicated he would prefer to remain masked, as all persons in the courtroom were required to be masked pursuant to [Center for Disease Control ("CDC")] guideines.[2]

> > [2] The attorneys were permitted to remove their masks for, inter alia, closing arguments.

> The jury was able to sufficiently view the witness's demeanor, being located within close proximity to the witness while still remaining socially distant from the witness and each other. They could view the witness's outward appearance or behavior or behavior including tone of voice, cadence, posture, gestures, and other body language. The jury could see any hesitation or readiness to answer questions as well as observe nervousness, frustration or hostility. The jury was also able to view the witness's eyes. The witness's mouth and nose were the only features that may not have been visible to the jury. Finally, the jury was instructed to indicate to the court if there was difficulty hearing any testimony.

Trial Court Opinion, 11/6/20, at 7-8.

Appellant counters that the mask was unnecessary because the witness, as per the trial court's opinion, was eleven feet away from any other person. Appellant also argues that the trial could have been held in a larger room, such as the auditorium used for jury selection, or that trial could have been delayed until the court obtained and installed plexiglass barriers in the courtroom. Appellant concludes from this that no public policy justified the trial court's decision to permit the witness to remain masked.

In apparent response, the trial court offered what it described as an "individualized finding of necessity" for the masks in accord with **Coy** and **Atkinson**. But this description does not make it so. Again, the trial court permitted the attorneys and witnesses to remove masks if they wished. And while I am sympathetic to the court's reasoning that the witness's discomfort with removing their masks might have affected their demeanor, that reasoning finds no support in the record. The witnesses in this case were asked no questions about their decisions to remain masked. The trial court's reasoning was purely speculative and could apply generally to any witness who chose to remain masked during a pandemic. **Atkinson** explained the need for a hearing and specific, individualized findings to support any arrangement that circumscribes the right to a face-to-face confrontation. We have no hearing transcript and no individualized findings in this case because the trial court failed to follow **Atkinson**.

I recognize that preventing the spread of a deadly disease is an important policy goal, and that some courts have held that COVID masks are permissible under the Confrontation Clause when they are worn as a necessity in furtherance of that goal. In this case it is apparent from the record that the trial court and counsel for both parties believed, given the precautions in place in the courtroom during Appellant's trial, that the witnesses could have removed their masks without danger to themselves or others present in the courtroom. In the end, therefore, the question is whether the unobstructed face-to-face confrontation to which a defendant is ordinarily entitled is subject to constraint based on a witness's unexplained preference. Nothing in the law supports an affirmative answer. *Crittenden*, *James*, and *Jesenya O.* involved case-specific findings that COVID masks were necessary. There is no indication in any of those cases that the witnesses were given a choice. In *Ketchens*, the witness was permitted to cover part of her face in accord with the tenets of her religious faith.[8] Instantly, nothing in the record supports an individualized finding that masks were necessary. I would conclude that Appellant was unlawfully deprived of the right to confront the witnesses against him.

_____

[8] I recognize that the witness in *Smarr* said she wore a scarf over her face, 'whenever [she] feels like [she] want[s] to.'" *Smarr*, 179 WDA 2018, at *1. As an unpublished opinion, *Smarr* is not binding on this panel. Further, *Smarr* is distinguishable because it involved a scarf worn in accord with the tenets of the witness's religious faith. My analysis is based on the binding law on point, as articulated in *Coy*, *Craig*, and *Atkinson*.

I would also reject the Commonwealth's argument that any error in this case was harmless. Confrontation Clause violations are subject to harmless error analysis. **Atkinson**, 987 A.2d at 751-52.

> We have recognized that other types of violations of the Confrontation Clause are subject to that harmless-error analysis and see no reason why denial of face-to-face confrontation should not be treated the same. An assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, ..., had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence. [**Coy** 487 U.S. at 1021–1022].

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* The **Atkinson** Court found harmless error because the testimony procured in violation of the Confrontation Clause was cumulative of testimony from several other witnesses. *Id.* at 753.

The same was not true in this case. Brown and Jackson were the only witnesses to Appellant's alleged crimes. The jury's assessment of their credibility was critical to the outcome of this case. The outcome, had Brown and Jackson testified without masks, is a matter of pure speculation. I would not find the trial court's error harmless.

Based on the foregoing, I would vacate the judgment of sentence and order a new trial.[9]  I respectfully dissent.

---

[9]  I note my agreement with the Majority's analysis of Appellant's sufficiency of the evidence argument.  Because I would award a new trial for the Confrontation Clause violation, I would not reach the weight of the evidence argument.